## LIGGETT *v.* GLENN.

## GLENN *v.* LIGGETT.

*(Circuit Court of Appeals, Eighth Circuit.* June 13, 1892.)

### Nos. 61, 62.

1. STATE AND FEDERAL COURTS — CONCURRENT JURISDICTION — PRIORITY OF SUIT — IDENTITY.

A suit in a federal court by a stockholder in behalf of himself and other stockholders against a corporation and its officers and directors, seeking by injunction to correct abuses of administration, alleging insolvency, and asking the appointment of a receiver to wind up the business and pay the debts of the corporation, is not identical, as to interests of parties, with a subsequent suit in a state court by a judgment creditor in behalf of himself and other creditors to ascertain the validity of a deed of assignment from the corporation to certain trustees, and asking the appointment of a receiver, with power to collect all assessments that may be made on the capital stock, and otherwise care for and collect the assets and credits of the corporation: and the pendency of the former suit, and the appointment of a receiver therein, does not deprive the state court of jurisdiction to entertain the latter.

2. SAME — RECEIVERS.

In such case the general rule that, in cases of concurrent jurisdiction, the jurisdiction of the court first taking control of the property is exclusive, does not apply, it appearing that the receiver appointed by the federal court never had actual possession of the corporation's property, excepting an insignificant portion, which was sold, and the proceeds applied to the expenses of the receivership, that no assessments were ordered by that court, and that the receiver was discharged and the case dismissed before any steps were taken in the state court for the acquisition or distribution of any property.

3. CORPORATIONS — ASSESSMENT ON STOCK.

In the decree of the federal court appointing the receiver, a clause providing that, "if there shall be any sums due upon the shares of the capital stock of said company, the receiver will proceed to collect and recover the same," cannot be construed as a call for a balance of 80 per cent. of the subscription, not yet called for, but merely as giving authority to collect any sums not paid on calls already made.

4. SAME — STOCKHOLDERS — EVIDENCE — STOCK BOOK.

In an action to recover assessments on the stock of a corporation, the stock books of the company are competent evidence to show that defendant is a stockholder, when connected with other evidence showing that a name contained therein, which is identical with defendant's name, was entered as his name.

5. PRIVILEGED COMMUNICATIONS — ATTORNEY AND CLIENT.

Defendant and other persons signed a written contract with an attorney to pay him certain fees for defending all suits brought against them to recover assessments on the stock of a corporation, the expense to be borne "by us *pro rata* on the amount of stock subscribed by us as set opposite our names." This contract was subsequently filed by the attorney in a probate court as a voucher for a claim for fees against the estate of one of the signers. From there it was obtained by another attorney, and, in a suit against another signer, was offered as evidence that the latter was a stockholder. *Held,* that the document fell within the rule protecting confidential communications between attorney and client, and was inadmissible. 47 Fed. Rep. 472, reversed.

6. SAME.

The admissibility of a paper containing communications between client and attorney is not dependent upon the manner in which possession thereof was obtained from the attorney, but upon the inherent character of the communication itself. If the communication is privileged, it can only be deprived of that character by some unequivocal act on the part of the client himself.

7. SAME — STATE LAWS INAPPLICABLE.

In actions in the federal courts, the question whether a communication between client and attorney is admissible in evidence is not dependent upon the statutes of the state in which the court sits. *Insurance Co.* v. *Schaefer,* 94 U. S. 457, followed.

**8. APPEAL—HARMLESS ERROR.**

Whether the production of a stock book bearing a name identical with that of a person sued for an assessment is sufficient to create a presumption that such person is a stockholder is a question which may be dependent on circumstances, and where incompetent evidence thereof was admitted, and the record fails to show that sufficient other evidence was introduced to render necessary the conclusion that the parties were identical, the court cannot say that the admission of the incompetent evidence was harmless, and must therefore reverse the judgment.

**9. SAME—RECORD—PRESUMPTIONS.**

In a suit to recover an assessment on the stock of a corporation, the court allowed interest thereon only from the date of the suit. On appeal the record did not contain the charter and by-laws of the corporation, and did not purport to contain all the evidence. *Held*, that while, in the absence of special provisions, interest would run from the date of the call, the court could not say but that the charter and by-laws were before the trial court, and contained matter to justify its decision, and must therefore affirm the same.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Action by John Glenn, trustee of the National Express & Transportation Company, against John E. Liggett, to recover an assessment on the stock of said company. Judgment for plaintiff, allowing interest from the commencement of the suit. 47 Fed. Rep. 472. Both parties bring error, plaintiff complaining only of the allowance of interest as insufficient. Reversed on defendant's exceptions.

For opinions in prior suits to recover assessments, see 23 Fed. Rep. 695, and 24 Fed. Rep. 536.

Statement by SHIRAS, District Judge:

On the 12th of December, 1865, the general assembly of the state of Virginia adopted an act entitled "An act to amend and re-enact an act to incorporate the Southern Express Company, passed March 22, 1861, and to incorporate the National Express & Transportation Company;" it being therein provided that the company known by the latter name should be a corporation with authority to engage in the express and transportation business, with an authorized capital stock of $5,000,000, divided into shares of $100 each. The company organized under the provisions of the act, and subscriptions to its capital stock were made by many persons residing in different states. On the 8th day of August, 1866, Josiah Reynolds, a stockholder in the corporation, filed a bill in equity in the circuit court of the United States for the eastern district of Virginia, on behalf of himself and all other stockholders of the company, averring that the provisions of the charter of the corporation had not been observed by the officers of the company; that its assets had been wasted and misapplied; that the company was insolvent and unable to further carry on the business for which it was created; and for these reasons an injunction and appointment of a receiver was asked, to the end that the affairs of the corporation might be settled and the company be dissolved. On the 18th of August, 1866, an injunction was granted, restraining the company, its directors and officers, from using the property of the company for any other purpose than carrying on the regular and legitimate express and transportation business for which the company was organized.

On the 18th of September, 1866, the board of directors of the corporation authorized and directed the execution of a general deed of assign-

ment of the property of the company to trustees for the benefit of creditors; and on the 20th of September, 1866, the president of the company executed a general deed of assignment to John B. Hoge, John J. Kelly, and C. Oliver O'Donnell, as trustees, in accordance with the action of the board of directors previously had. On the 31st of December, 1866, the United States circuit court entered an order appointing Westel Willoughby a "receiver of the said National Express & Transportation Company, and of the money, property, and effects of the said National Express & Transportation Company, with all the powers, rights, and obligations usual in such cases, subject to the control of this court, until the affairs of said company be fully and finally closed up."

On the 4th of December, 1871, there was filed in the chancery court of the city of Richmond, Va., by W. W. Glenn, a creditor of said express company, suing in his own behalf and in that of such other creditors as should become parties, a bill in equity against said corporation, wherein it was charged that said company was insolvent; that it was heavily indebted to various parties, including said W. W. Glenn; that 20 per cent. of the capital stock had been called in, but only a small part thereof had been paid; that the remaining portion of the capital stock was subject to assessment and collection for the payment of the debts of the corporation; that it was doubtful whether the trustees named in the general deed of assignment had the legal right to collect the portion of the capital stock not previously called for by the corporation itself; that the validity of the deed of assignment was questioned and in dispute; that the rights of the creditors were in danger, and that for their protection the question of the validity of the assignment should be set at rest; that the trustees should be required to render an account; that a receiver or trustee should be appointed, with full power to collect all assessments that might be made upon the capital stock, and otherwise care for and collect the assets and credits of said company. On the 4th of August, 1879, an amended and supplemental bill was filed in said cause by the administrator of W. W. Glenn, and on the 14th of December, 1880, after due service upon the corporation and the trustees named in the deed of assignment, the court entered a decree holding the deed of assignment to be valid, relieving the said trustees from further duty or responsibility, appointing John Glenn trustee in their place, and making an assessment upon the capital stock of 30 per cent., and authorizing and directing the said John Glenn, as trustee, to collect such assessment and to sue for the same in all jurisdictions.

On the 10th of December, 1880, four days before the entry of the decree by the city court of Richmond, the receiver appointed by the United States circuit court in December, 1866, filed a brief report in that court, in which he stated that none of the creditors had submitted their claims to him; that no action had been asked at his hands by any one for at least 10 years past; that he had only collected about $1,000, all of which had been expended in endeavoring to procure the books and papers of the company, in which efforts he had been unsuccessful. On the filing of this report by the receiver, and on the same day, the said circuit

court of the United States in the case of *Reynolds* v. *National Express &*
*Transp. Co.*, entered the following order:

"Upon the report of receiver W. Willoughby being filed, on motion of the
defendants, John Blair Hoge and J. J. Kelly, by John Howard, their counsel,
it is adjudged, ordered, and decreed that the order of the 31st of December,
1866, filed on the 22d day of January, 1867, appointing a receiver in this case,
be, and the same is hereby, vacated, annulled, and set aside, and said re-
ceiver, W. Willoughby, be discharged and exonerated, the injunction hereto-
fore granted in this cause be dissolved, and this suit be dismissed."

On the 27th of June, 1884, by an order duly made by the chancery
court of the city of Richmond, Va., the cause pending before it was re-
moved to the circuit court of Henrico county, Va., to be there proceeded
with according to law; and on the 26th of March, 1886, a decree was
entered in said cause by the last-mentioned court, making a further as-
sessment and call for 50 per cent. of the capital stock of said corporation,
and authorizing the trustee to enforce the collection thereof.   In 1884,
John Glenn, trustee under the appointment made by the chancery court
of the city of Richmond, brought suit against John Liggett in the United
States circuit court for the eastern district of Missouri, to collect from
him the 30 per cent. assessment upon 63 shares of stock in said corpo-
ration, and on the 15th of July, 1885, the plaintiff Glenn suffered a
nonsuit in that action.

On the 12th of July, 1885, the said Glenn, trustee, brought the pres-
ent action in the United States circuit court for the eastern district of
Missouri against John Liggett; and on the 14th of December, 1886,
filed an amended petition in said action, wherein it is averred that said
Liggett, in the year 1866, acquired by assignment 63 shares of the cap-
ital stock of the National Express & Transportation Company, and as
the owner thereof became bound to pay the 30 and 50 per cent. assess-
ments made upon said capital stock by the chancery court of the city of
Richmond and the circuit court of Henrico county, Va.    To this peti-
tion the said Liggett answered, denying the several allegations of the
petition, and further pleading that the chancery court of the city of
Richmond never had or acquired any jurisdiction of the subject-matter
or of the parties defendant in the cause of *W. W. Glenn* v. *National Exp.*
*& Transp. Co.*, by reason of the pendency in the circuit court of the
United States for the eastern district of Virginia of the cause of *Reynolds*
v. *Said Express Co.*, and the proceedings had therein; that, more than
10 years having elapsed since the entry of the decree or order in said
cause, this action is barred by the provisions of the statutes of Missouri.

The case was tried before the court, a jury being waived, and, judg-
ment being in favor of the plaintiff, the defendant, Liggett, brings the
case before this court, assigning error in several particulars, but which
can be all considered under four general heads.

*Mason G. Smith* and *John A. Harrison*, for plaintiff in error, Liggett.

The decrees of the state court of Virginia are void, because said courts were
without jurisdiction to pass them.

*Wiswall* v. *Sampson*, 14 How. 52; *Peale* v. *Phipps*, Id. 368-374; *Vaughan*
v. *Northup*, 15 Pet. 1; *Gaylord* v. *Railroad*, 6 Biss. 286; *Barton* v. *Bar-*

*bour,* 104 U. S. 126; *Heidritter* v. *Oilcloth Co.,* 112 U. S. 294 302, 5 Sup. Ct. Rep. 135.

The federal court for the district of Virginia had jurisdiction and lawful authority to render the decree in the suit of *Reynolds* v. *National Exp. & Transp. Co.,* of date December 31, 1866, and that decree is not open to collateral attack in this cause.

2 Wat. Corp. par. 356; *Stevens* v. *Davison,* 18 Grat. 828; *Thompson* v. *Greeley,* (Mo. Sup.) 17 S. W. Rep. 962; *Buck* v. *Insurance Co.,* 4 Fed. Rep. 849; *In re Suburban Hotel Co.,* L. R. 2 Ch. App. 737, per Lord CAIRNS, *loc. cit.* 750; Mor. Priv. Corp. (2d Ed.) §§ 284, 285; Beach, Rec. § 404; *Lawrence* v. *Insurance Co.,* 1 Paige, 587; Freem. Judgm. § 124; High, Rec. § 203; *Greeley* v. *Bank,* 103 Mo. 212, 15 S. W. Rep. 429; *Ames* v. *Trustees,* 20 Beav. 353; *Vermont, etc., R. Co.* v. *Vermont Cent. R. Co.,* 46 Vt. 795, and cases there cited; *Russell* v. *Railway Co.,* 3 Macn. & G. 104; *Beverley* v. *Brooke,* 4 Grat. 187; *Joy* v. *De Groot,* 17 Abb. Pr. 36, note; *Barbour* v. *Bank,* 45 Ohio St. 133, 12 N. E. Rep. 5; *Neall* v. *Hill,* 16 Cal. 146; *Murray* v. *Vanderbilt,* 39 Barb. 147; *Mining Co.* v. *Edwards,* 103 Ill. 475; Cook, Stocks, § 648; *Dodge* v. *Woolsey,* 18 How. 341.

Actual seizure of the assets of the express company by the receiver in the federal court was unnecessary. The filing of the bill and prayer for a receiver gave that court exclusive jurisdiction to control the *res,* the assets; but, even were this not so, the entry of the decree of December 31, 1866, placed all the assets, tangible and intangible, *in custodia legis,* and under the exclusive control of the federal court, and could not be proceeded against by any other court. *Pennoyer* v. *Neff,* 95 U. S. 727; *Cooper* v. *Reynolds,* 10 Wall. 317; *Ames* v. *Trustees,* 20 Beav. 332.

The jurisdiction of the federal court was complete and exclusive as to parties and subject-matter. The trustees under the assignment were brought in and made parties, and these trustees represented the creditors. *Corcoran* v. *Canal Co.,* 94 U. S. 741 745; *Kerrison* v. *Stewart,* 93 U. S. 155.

But it was not necessary to bring in the trustees. They were not purchasers for value, and were bound by the *lis pendens.* 1 Story, Eq. Jur. §§ 405, 406; *Tilton* v. *Cofield,* 93 U. S. 168.

The jurisdiction of any court exercising authority over a subject may be inquired into in every other court where the proceedings of the former are relied on, and brought before the latter by the party claiming the benefit of such proceedings. *Elliott* v. *Peirsol,* 1 Pet. 328; *Hickey* v. *Stewart,* 3 How. 750; *Christmas* v. *Russell,* 5 Wall. 290.

Jurisdiction once vested is not ousted by subsequent events; but "the jurisdiction of a court depends upon the state of things at the time action is brought." *Mollan* v. *Torrance,* 9 Wheat. 537, MARSHALL, C. J.; *Morgan's Heirs* v. *Morgan,* 2 Wheat. 290; *Culver* v. *Woodruff Co.,* 5 Dill. 392.

When suit is instituted in a court without jurisdiction of the subject-matter, and the court is afterwards invested with jurisdiction, this subsequent investure does not cure the prior defect, since without jurisdiction all acts are absolutely void. Wells, Jur. p. 12, § 18.

The decree of the federal court, whereby a receiver was appointed of the funds, property, and effects of the express company, and vested with title to all property of said company, for the use and benefit of the creditors of the company, and whereby the business of the company was decreed to be wound up by and through the receiver, who had entered upon his administration, deprived the company of all faculty to represent the stockholders as their agent in another court, in reference to the same property and assets so in the possession of the receiver, and as to which he so had title and exclusive control. The receiver, and not the company, had such representative faculty as to stockholders and their liability, and this was necessarily exclusive.

*Express Co.* v. *Railroad Co.*, 99 U. S. 191–199; *Doggett* v. *Railroad Co.*, Id. 72; *Davis* v. *Gray*, 16 Wall. 203; Beach, Rec. §§ 663, 668, 678, 711; *Kirkpatrick* v. *McElroy*, 41 N. J. Eq. 539, 7 Atl. Rep. 647; *Osgood* v. *Maguire*, 61 N. Y. 524.

A cause of action accrued to the receiver of the federal court by virtue of the decree of December 31, 1866, to recover the entire balances due on the stock of the stockholders of the express company, and more than 19 years having elapsed since said decree was entered before the commencement of this action, this action is barred by the statutes of limitation of Missouri.

*U. S.* v. *State Bank of North Carolina*, 6 Pet. 29; *Van Buren* v. *Chenango County Mut. Ins. Co.*, 12 Barb. 671; *Pentz* v. *Hawley*, 1 Barb. Ch. 122, Rev. St. N. Y. 1836, c. 8, art. 3, § 69, p. 469, (see the language of the decree and of this statute.)

The statute of Missouri is as follows: "Sec. 6775. *What within five years.* Within five years—*First*, all actions upon contracts, obligations, or liabilities, express or implied, except those mentioned in section 6774, and except upon judgments or decrees of a court of record, and except where a different time is herein limited," etc.

The receiver of the federal court having been appointed for the same purposes, in effect, as was plaintiff, Glenn, and the decree in the federal court case being substantially the same as the decree in the state court, and efficient for the same end, it follows that whatever would have barred a recovery against a stockholder in an action by such federal court receiver will bar plaintiff in this case.

Assuming that the decree of the federal court was tantamount to a call and assessment on all the stock, and gave the receiver, acting for the creditors of the company, a cause of action, immediately enforceable by suit against the stockholders, so as to set in motion the statute of limitations in favor of such stockholders and against such receiver, the question arises as to whether those facts, if sufficient to set the statute in motion against the receiver, will bar the plaintiff in this case.

(*a*) The plaintiff, Glenn, is bound by the decree of the federal court. This results from the fact that he took and holds under the trustees in the deed of assignment. That deed was executed by the company pending the suit, and consequently under the doctrine of *lis pendens* the grantees in such deed and their assigns were bound by the decree just as the corporation, the grantor, was bound.

(*b*) Nor were the grantees in the deed of assignment purchasers for value.

(*c*) The decree of date December 31, 1866, was for the benefit of the creditors and others interested in the property of the corporation. The receiver represented all and held for the benefit of all. The proceeding was for the benefit of the same persons (and the receiver held for them) as was the assignment, and, the beneficiaries being the same, it follows that they are bound by the statute which the decree set in motion.

The books of a corporation (as distinguished from books containing entries of corporate acts, meetings, etc.) cannot be used against a stranger to connect him with the corporation as a stockholder.

Thomp. Liab. Stockh. § 370; Whart. Ev. § 662; Greenl. Ev. § 493; Angell & A. Corp. § 679; Tayl. Ev. § 1781; *Bain* v. *Railroad Co.*, 3 H. L. Cas. 22; *Marriage* v. *Lawrence*, 3 Barn. & Ald. 142; *Railroad Co.* v. *Hickman*, 28 Pa. St. 318–328; *Com.* v. *Woelper*, 3 Serg. & R. 29; *Chase* v. *Railroad Co.*, 38 Ill. 215; *Manufacturing Co.* v. *Vandyke*, 9 N. J. Eq. 498; *Railroad Co.* v. *Eastman*, 34 N. H. 136; *Haynes* v. *Brown*, 36 N. H. 545–568; *Jackson* v. *Walsh*, 3 Johns. 226; *Fox's Case*, 3 De Gex., J. & S. 465; *Railroad Co.* v. *Brownrigg*, 4 Exch. 425; 1 Saund. Pl. & Ev. 850; *Hager* v. *Cleveland*, 36 Md. 476–494; *Jones* v. *Trustees, etc.*, 46 Ala. 626; *Mudgett* v. *Horrell*, 33 Cal. 25.

The agreement for fees, being a communication between an attorney and a client, was, after its delivery to Bogy, Ewing, and Holliday, a privileged communication.

*State* v. *Dawson*, 90 Mo. 149, 1 S. W. Rep. 827, and cases cited; *Cross* v. *Riggins*, 50 Mo. 335; *Johnson* v. *Sullivan*, 23 Mo. 474; *Hull* v. *Lyon*, 27 Mo. 570; 1 Phil. Ev. (4th Amer. Ed.) p. 147; 1 Greenl. Ev. § 240.

The entries in the books of the express company were not so proved or authenticated as to become evidence against the plaintiff in error.

*T. K. Skinker*, for defendant in error, Glenn.

The receivership in the *Reynolds Case* is no defense to this action:

(1) Because the decree of the Richmond chancery court is conclusive as against stockholders that it was properly rendered.

*Hawkins* v. *Glenn*, 131 U. S. 319, 9 Sup. Ct. Rep. 739; *Glenn* v. *Liggett*, 135 U. S. 533, 10 Sup. Ct. Rep. 867; *Graham* v. *Railroad Co.*, 118 U. S. 174–179, 6 Sup. Ct. Rep. 1009; *Hamilton* v. *Glenn*, 85 Va. 901, 9 S. E. Rep. 129; *Lehman* v. *Glenn*, 87 Ala. 618, 6 South. Rep. 44.

(2) Because the chancery court did not interfere or undertake to interfere with the possession of the receiver.

High. Rec. § 50; *Buck* v. *Colbath*, 3 Wall. 335, 345; *Bank* v. *Masonic Hall*, 63 Ga. 549; *Heidritter* v. *Oil-Cloth Co.*, 112 U. S. 304, 305, 5 Sup. Ct. Rep. 135; *Yonley* v. *Lavender*, 21 Wall. 278; *Heath* v. *Railway Co.*, 83 Mo. 617; *The Holladay Case*, 27 Fed. Rep. 830; *Coal Co.* v. *McCreery*, 141 U S. 475, 12 Sup. Ct. Rep. 28.

That it did not so interfere is plain, because:

*First.* The Reynolds decree did not authorize the receiver to collect the uncalled liability, but only what had been called, but not paid.

*Scovill* v. *Thayer*, 105 U. S. 155; *Hawkins* v. *Glenn*, 131 U. S. 319, 9 Sup. Ct. Rep. 739; *Glenn* v. *Liggett*, 135 U. S. 533, 10 Sup. Ct. Rep. 867; *Shaughnessy* v. *Insurance Co.*, 21 Barb. 605, 609; *Devendorf* v. *Beardsley*, 23 Barb. 665.

*Second.* At any rate, the Reynolds decree was inoperative so far as the Missouri stockholders were concerned.

*Booth* v. *Clark*, 17 How. 322; *Insurance Co.* v. *Needles*, 52 Mo. 17; *Brigham* v. *Luddington*, 12 Blatchf. 237; *Atkins* v. *Railway Co.*, 29 Fed. Rep. 173; *Askew* v. *Bank*, 83 Mo. 366; *Graydon* v. *Church*, 7 Mich. 36; *Curtis* v. *Smith*, 6 Blatchf. 549, 551; *Catlin* v. *Silver Plate Co.*, 123 Ind. 477, 24 N. E. Rep. 250.

*Third.* Again, the receiver was never in possession, having for 14 years omitted to exercise any powers.

*Bank* v. *Beaston*, 7 Gill & J. 421; *Bank* v. *Richards*, 3 Hun, 366; High. Rec. § 137; *Redfield* v. *Iron Co.*, 110 U. S. 174, 3 Sup. Ct. Rep. 570.

*Fourth.* The federal court purposely surrendered its jurisdiction. *Gaylord* v. *Railroad Co.*, 6 Biss. 286, cited in High, Rec. (2d Ed.) § 50.

*Fifth.* Dismissal of the Reynolds suit left matters in same position as if the suit had never been instituted.

*Dowling* v. *Polack*, 18 Cal. 626; 2 Black, Judgm. §§ 720, 723; *Rosse* v. *Rust*, 4 Johns. Ch. 300; *Wheeler* v. *Ruckman*, 51 N. Y. 392; *Jones* v. *Howard*, 3 Allen, 223; *Clapp* v. *Thomas*, 5 Allen, 159; Potter's Dwar. St. (Ed. 1871,) p. 160; *Montgomery* v. *Merrill*, 18 Mich. 338; High, Rec. § 135; *Beverley* v. *Brooke*, 4 Grat. 212; *Sharp* v. *Carter*, 3 P. Wms. 375; *Glenn* v. *Gill*, 2 Md. 1.

The Richmond chancery court and the Henrico circuit court were by statute vested with general equitable jurisdiction. Laws Va. 1874, pp. 224, 225; Code Va. 1873, p. 1103, c. 170, § 2.

Statute of limitations did not begin to run in favor of stockholders from date of decree, December 31, 1866, because:

(1) As already shown, that decree was not a call. *Glenn* v. *Macon*, 32 Fed. Rep. 7.

(2) If a call, it was not binding on this plaintiff, who is not a successor to the receiver.

This action is not barred by lapse of time since December 14, 1880.

Rev. St. Mo. 1889, § 6784; *Shaw* v. *Pershing*, 57 Mo. 416; *Briant* v. *Fudge*, 63 Mo. 489; *State* v. *O'Gorman*, 75 Mo. 370; *Chouteau* v. *Rowse*, 90 Mo. 195, 2 S. W. Rep. 209.

The court properly permitted the fee contract to be read in evidence, because:

(1) The paper itself is not of a confidential character.

1 Greenl. Ev. §§ 236–239; *Riggs* v. *Denniston*, 3 Johns. Cas. 198; *Stoney* v. *McNeill*, Harp. Law, 157; *Hatton* v. *Robinson*, 14 Pick. 416; *House* v. *House*, 61 Mich. 69, 27 N. W. Rep. 858; *Earle* v. *Grout*, 46 Vt. 113; *In re McCarthy's Will*, (Sup.) 8 N. Y. Supp. 578.

(2) It was not produced by any person standing in a confidential relation to defendant.

1 Whart. Ev. (3d Ed.) § 586; 1 Phil. Ev. side pages 147, 148; *Rhoades* v. *Selin*, 4 Wash. C. C. 718, 719; *Brandt* v. *Klein*, 17 Johns. 335; *Jackson* v. *McVey*, 18 Johns. 330; *Coveney* v. *Tannahill*, 1 Hill, (N. Y.) 33; *McPherson* v. *Rathbone*, 7 Wend. 216; *Brown* v. *Payson*, 6 N. H. 443; *Eicke* v. *Nokes*, 1 Moody & M. 304; *Bevan* v. *Waters*, Id. 235; *Wilson* v. *Rastall*, 4 Term R. 759; 1 Greenl. Ev. § 241; *Snow* v. *Gould*, 74 Me. 540; *Mitchell* v. *Bromberger*, 2 Nev. 345; *Bank* v. *Suydam*, 5 How. Pr. 254.

(3) Communications, oral and written alike, are privileged only in the sense that the attorney to whom they are made cannot reveal them.

*Coveney* v. *Tannahill*, 1 Hill, (N. Y.) 33; *Chirac* v. *Reinicker*, 11 Wheat. 294; *Brayton* v. *Chase*, 3 Wis. 456; *Wilson* v. *Rastall*, 4 Term R. 753; *Jackson* v. *French*, 3 Wend. 337; *Hoy* v. *Morris*, 13 Gray, 519; *Goddard* v. *Gardner*, 28 Conn. 172; *Insurance Co.* v. *Reynolds*, 36 Mich. 502; *Andrews* v. *Solomon*, Pet. C. C. 356; *Holman* v. *Kimball*, 22 Vt. 555; *Fountain* v. *Young*, 6 Esp. 113; *Barnes* v. *Harris*, 7 Cush. 576; 1 Greenl. Ev. § 239; *Doe* v. *Jauncey*, 8 Car. & P. 99; *Sample* v. *Frost*, 10 Iowa, 266; *Hawes* v. *State*, 88 Ala. 37, 7 South. Rep. 302; *Lloyd* v. *Mostyn*, 10 Mees. & W. 481.

Holliday was a competent witness to prove the fee contract.

*Johnson* v. *Daverne*, 19 Johns. 134; *Brown* v. *Jewett*, 120 Mass. 215; *Hurd* v. *Moring*, 1 Car. & P. 372; Rev. St. Mo. 1889, § 8925; *Bramwell* v. *Lucas*, 2 Barn. & C. 745; *Foster* v. *Hall*, 12 Pick. 89; 1 Greenl. Ev. § 242.

The books of the company were properly received in evidence.

(1) Their identity was sufficiently proven.

(2) They make a *prima facie* case against defendant.

Code Va. 1873, c. 57, § 27; *Vanderwerken* v. *Glenn*, 85 Va. 9, 6 S. E. Rep. 806; *Stuart* v. *Railroad Co.*, 32 Grat. 155; *Turnbull* v. *Payson*, 95 U. S. 418; *Lehman* v. *Glenn*, 87 Ala. 627, 6 South. Rep. 44; *Semple* v. *Glenn*, 91 Ala. 264, 6 South. Rep. 46, and 9 South. Rep. 265; *Glenn* v. *Orr*, 96 N. C. 413, 2 S. E. Rep. 538; *Glenn* v. *Springs*, 26 Fed. Rep. 494; *Railroad Co.* v. *Applegate*, 21 W. Va. 172; *Hammond* v. *Straus*, 53 Md. 16; *Wood* v. *Railroad Co.*, 32 Ga. 273; *Hoagland* v. *Bell*, 36 Barb. 57; *Rudd* v. *Robinson*, 126 N. Y. 113, 26 N. E. Rep. 1046; *Turnpike Road Co.* v. *Van Ness*, 2 Cranch, C. C. 449; *Owings* v. *Speed*, 5 Wheat. 420; *Hayden* v. *Cotton Factory*, 61 Ga. 233; Rev. St. Mo. 1889, § 2532; Gen. St. Kan. 1889, p. 383, § 1199; Sayles' Civil St. Tex. art. 601; Code W. Va. 1887, p. 493, § 19; 2 Rev. St. Ind. 1888, § 3500; Gen. St. Ky. 1887, p. 766, § 16; 3 Throop's Rev. St. N. Y. (8th Ed.) p. 716, § 17; Ann. St. Colo. 1891, p. 643, § 508; Comp. Laws Cal. 1853, p. 277, § 18;

Comp. Laws Mont. 1888, p. 731, § 471; St. 8 & 9 Vict. c. 16, § 28; *Wilson* v. *Holt*, 83 Ala. 529, 3 South. Rep. 321; Whart. Ev. § 701.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge, (*after stating the facts.*) The first position taken by counsel for the plaintiff in error is that the decrees or orders entered by the chancery court of the city of Richmond, and by the circuit court of Henrico county, Va., making assessments upon the capital stock of the insolvent corporation, were mere nullities, for want of jurisdiction on part of said courts over the subject-matter and over the company named as defendant therein. The contention on part of the plaintiff in error is that the pendency of the suit brought by Reynolds in the United States court in 1866, and the appointment of the receiver in that case, with the powers conferred upon him, precluded the chancery court of the city of Richmond from taking jurisdiction over the company in the suit brought by W. W. Glenn in 1871; and that the assets of the corporation, including the liability of the stockholders for assessments upon the capital stock, became subject to the jurisdiction of the federal court in such sense that no other court could assume control over the same. This contention involves two propositions: *First*, that the pendency of the *Reynolds Case* in the federal court ousted the jurisdiction of the state court over the case brought by W. W. Glenn; and, *second*, that, granting jurisdiction over the case in the state court, the assets of the company were wholly withdrawn from the operation of any decree or order affecting the same made by the state court, by reason of the appointment of the receiver in the federal court. If it appears that two suits are pending in the same jurisdiction in which there is identity of subject-matter, of parties, and of relief sought, the pendency of the first suit may be pleaded in abatement of the second, on the ground that the bringing of the latter subserves no good purpose, subjects the party to increased expense, and is therefore vexatious; but the pendency of a suit in a state court cannot be pleaded in abatement of a suit in a federal court, because the jurisdictions are, in this sense, foreign to each other. *Insurance Co.* v. *Brune's Assignee*, 96 U. S. 588; *Gordon* v. *Gilfoil*, 99 U. S. 168.

Furthermore, if the pendency of another suit in the same jurisdiction is pleaded in abatement, it must appear that the former suit presents the same case; that is, there must be identity in the interests represented, in the rights asserted, and in the purpose sought. Thus, as is said by the supreme court in *Watson* v. *Jones*, 13 Wall. 679:

"But, when the pendency of such a suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interest; there must be the same rights asserted, and the same relief prayed for. This relief must be founded on the same facts, and the title or essential basis of the relief sought must be the same. The identity in these particulars should be such that, if the pending case had already been disposed of, it could be pleaded in bar as a former adjudication of the same matter between the same parties."

In our judgment, the case brought in the name of Reynolds is not identical with that brought in the name of W. W. Glenn, according to the test furnished by this decision of the supreme court. Reynolds sued as a stockholder, and for the protection and enforcement of the rights of himself and all other stockholders. Glenn sued as a creditor on behalf of himself and such other creditors as might unite in the proceedings. The basis of the relief sought in the two proceedings was essentially different, the one counting upon the rights of the stockholders to control the management of the affairs of the company, and as an incident thereto to require the company to pay its debts; the other upon the right of creditors to reach the assets of the company, including the unpaid subscriptions to the capital stock for the payment of the debts due. It is certainly not true that there is identity of interests, of title and of rights between the stockholders and creditors of a corporation. If in the *Reynolds Case* the federal court had refused to order an assessment upon the capital stock, could such finding or decree have been pleaded in bar of a suit by the creditors to enforce their rights? Certainly the rights of creditors are not subject to be barred by proceedings had solely between the company and its own shareholders. Furthermore, one of the principal objects of the *Glenn Suit* was to obtain an adjudication upon the question of the validity of the deed of assignment executed by the corporation, and as to the rights of creditors under this deed,—a purpose wholly without the purview of the bill filed in the *Reynolds Case.* For these reasons we are of the opinion that, even if the pendency of the *Reynolds Case* had been pleaded in abatement of the *Glenn Suit*, which it was not, it would not have availed to defeat the jurisdiction of the chancery court of the city of Richmond in that cause.

Jurisdiction of the case existing in that court, does it appear that it had jurisdiction to make assessments upon the capital stock of the company, and to authorize the collection thereof by the trustee by it appointed to execute the deed of assignment? It must be borne in mind that this court is dealing only with the question of the jurisdiction of the chancery court of the city of Richmond over the proceedings had before it. On part of the plaintiff in error it is contended that the action had in the federal court in the *Reynolds Cause* in the appointment of a receiver subjected to the jurisdiction of that court the assets of the company, including the liability of the shareholders to calls upon the shares of stock owned by them, and therefore the Richmond chancery court could not bring the same within its jurisdiction. The general doctrine that, in cases of concurrent jurisdiction, the jurisdiction of the court first taking control of the property involved is exclusive, does not justify the claim asserted by the plaintiff in error. If it be admitted that the proceedings taken in the federal court in the *Reynolds Case* had the effect of bringing within the exclusive control of that court the assets of the National Express & Transportation Company, and that it was within the power of that court to have wound up the affairs of the company, yet such exclusive control terminated when that court discharged the receiver, vacated all orders made by it, and dismissed the case.

From that time forward the assets of the corporation were not within the control of the federal court, but were subject to the jurisdiction of any other competent tribunal, just the same as though no suit had ever been brought in the federal court. From the record before us it appears that in the *Reynolds Case* the only property that came into the actual possession of the receiver appointed by the federal court was two freight cars, which were sold, and the proceeds were used in meeting the expenses of the receiver. The title to these cars passed by such sale, but it does not appear that any other property came into the possession of the receiver, and the court did not make any assessments or calls upon the capital stock; so that the utmost that can be claimed is that the assets of the company, including the liability of the shareholders, was for a time within the jurisdiction of the federal court, but such jurisdiction was, by the act of that court, yielded up and terminated before any disposition of the assets of the company was made, except of the two freight cars named. The facts appearing upon the record bring the case within the rule stated in the leading case of *Buck* v. *Colbath*, 3 Wall. 334, wherein it is said:

"It is only while the property is in possession of the court, either actually or constructively, that the court is bound or professes to protect that possession from the process of other courts. Whenever the litigation is ended, or the possession of the officer or court is discharged, other courts are at liberty to deal with it according to the rights of the parties before them, whether those rights require them to take possession of the property or not."

As already stated, the federal court on the 10th of December, 1880, vacated the order appointing a receiver and dismissed the case pending before it, thereby terminating all control and possession, actual or constructive, of that court over the assets of the corporation. From that time forward there was nothing to prevent the chancery court of the city of Richmond from asserting jurisdiction over the corporation or its assets, and from dealing with the same as justice and the rights of creditors might demand. The errors assigned, based upon the assumed nullity of the decrees entered by the Richmond chancery court and the circuit court of Henrico county, for want of jurisdiction over the corporation and its assets, thus appear to be without merit, and must be overruled.

The next question for consideration presented by the argument of counsel arises on the plea of the statute of limitations of the state of Missouri, which provides that actions upon contracts, obligations, or liabilities, express or implied, are barred by the lapse of five years. In the cases of *Hawkins* v. *Glenn*, 131 U. S. 319, 9 Sup. Ct. Rep. 739, and *Glenn* v. *Liggett*, 135 U. S. 533, 10 Sup. Ct. Rep. 867, the question of the time when the statute began to run in favor of the stockholders was involved, and the supreme court held that, as against creditors represented by the trustee, the statute did not begin to run until the entry of the decrees of the chancery court and the circuit court of Henrico county. Counsel for plaintiff in error contends, in an able argument, that these decisions are not conclusive of the proposition, for the reason that the

proceedings had in the *Reynolds Case* in the United States circuit court were not before the supreme court, and the effect thereof was not considered or ruled upon. The contention of counsel is that the proceedings had in the *Reynolds Case* were such in legal effect that the stockholders were then called upon to pay in the unpaid portions of the capital stock held by them; that the receiver appointed by the federal court had the authority to enforce payment by suit; and therefore the liability of the stockholders was so declared and established as that the statute began to run in their favor from the entry of the decree in the federal court on the 31st of December, 1866.

It is argued that the clause in that decree, declaring that, "if there shall be any sums due upon the shares of the capital stock of said company, the said receiver will proceed to collect and recover the same, unless the persons from whom the said sums shall be due are wholly insolvent, and for this purpose may prosecute actions at law or in equity for the recovery of such sums," was, in substance and effect, a call or demand upon the stockholders; that the receiver was authorized to sue for all portions of the capital stock remaining unpaid without further order or call upon the stockholders, and, as the right of action had thus been created, time began to run in favor of the stockholders from that date. In our judgment, the decree of December 31, 1866, is not susceptible of this broad construction. From the allegations of the bill and answer in the *Reynolds Case*, it appeared that there were stockholders who had failed to respond to the calls previously made by the company, and that steps had been taken to sell the delinquent stock for such unpaid installments, and, in our judgment, it was this indebtedness that the receiver was authorized to collect. The very language of the clause indicates this, in that it is said, "If there shall be any sums due upon the shares," etc. Certainly, if it had been the purpose of the court to make a call for the 80 per cent. of the stock which then remained uncalled for and unpaid, other and more apt language would have been used than that found in the decree. Furthermore, it is not to be believed that the court, without any examination into the affairs of the company and without knowing whether need existed for calling in the whole of the unpaid portion of the capital stock, amounting to $4,000,000, would have ordered such payment, and directed the receiver to enforce the same by legal proceedings. We conclude, therefore, that the decree of the federal court had reference only to calls already made, and that it cannot be held to be a call for the 80 per cent. which then remained uncalled for and unpaid. In our judgment, there was not an authorized call made upon the stockholders until the entry of the order in the Richmond chancery court on the 14th of December, 1880, and on that date, as is ruled in *Hawkins* v. *Glenn* and *Glenn* v. *Liggett*, *supra*, the statute began to run against the 30 per cent. assessment then ordered.

It has already been determined by the supreme court, in the case last cited, that, under the provisions of the Missouri statute, the bringing of the suit by the trustee in 1884, in which plaintiff suffered a nonsuit, and the recommencement thereof within a year from such nonsuit, saved the

bar which would otherwise have arisen under the statute, in that the present action was not brought until more than five years after the entry of the decree of December 31, 1880. The conclusion is therefore that the trial court did not err in overruling the plea of the statute of limitations.

The next assignment of error discussed by counsel presents the question whether the stock ledger and stock transfer books of the corporation were admissible in evidence on the issue whether the defendant below was a stockholder in the company. It cannot be questioned that, in the ordinary conduct of business in the community, books of this character are consulted for the purpose of determining who are the owners of the stock in corporate companies. In many of the states, statutes have been enacted requiring books of this character to be kept for the inspection of the public, and it is also a recognized rule of law that persons who knowingly permit their names to appear upon the books of a company as holders of stock therein may be estopped from proving the contrary, as against parties who have acted upon the faith of what thus appears upon the face of the books of the corporation. On principle it would seem to be true that ordinarily whatever is received and acted upon by the business community, as proper evidence of a given fact, may be admitted in evidence when the existence of the fact is a matter to be proven in the trial of a cause in court. Thus in the case of *Turnbull* v. *Payson*, 95 U. S. 418, it is said:

"Where the name of an individual appears on the stock book of a corporation as a stockholder, the *prima facie* presumption is that he is the owner of the stock, in a case where there is nothing to rebut that presumption; and, in an action against him as a stockholder, the burden of proving that he is not a stockholder, or of rebutting that presumption, is cast upon the defendant."

To create this presumption, it must appear that the book contains the name of the person whom it is claimed is a stockholder. In other words, it must be shown by the contents of the stock book, or by extrinsic evidence, or by both combined, that the name found in the book was so entered therein as the name of the party to the litigation. What amount of evidence may be needed to establish this necessary connection will, of course, vary with circumstances. The trial court held that in this case the plaintiff below could not rely upon the mere identity of name, but must produce other evidence sufficient to show that the person sued is the same person whose name is registered in the stock books. If proper evidence of this connecting fact was produced, then, in our judgment, the court below ruled rightly in admitting the stock books in evidence.

The next question discussed by counsel arises upon the action of the trial court in admitting in evidence what is termed the "fee contract," over the objection that the same, for the purpose for which it was offered in evidence, was a privileged communication between attorney and client. The facts touching this contract appear to be as follows: In the year 1867 the National Express & Transportation Company drew a number of drafts upon parties residing in St. Louis, Mo., claimed to be

indebted to the company for assessments on the capital stock, and delivered these drafts to the Bank of Commerce of Baltimore, Md.    To enforce payment of these drafts, suits were brought at St. Louis, some twenty or more in number, in the name of the Bank of Commerce, one of the same being against Liggett, plaintiff in error herein.    Messrs. Bogy, Ewing & Holliday were associated together as attorneys for the defendants in these suits, including the one against plaintiff in error. On the 28th of August, 1867, the following agreement was signed by plaintiff in error and other parties interested as defendants in the suits brought by the Bank of Commerce:

"We, the undersigned, desirous of resisting any further payment to the National Express and Transportation Company, hereby agree to pay Bogy, Ewing & Holliday, our attorneys, two thousand dollars, they to be at all expenses of traveling, and to defend all suits brought against us by the Bank of Commerce of Baltimore, or by the said express company or its receiver, for any calls made up to the present time.    The expense of such defense to be borne by us *pro rata* on the amount of stock subscribed by us as set opposite our names herein, and no assessment to be made or defense undertaken, unless signatures be obtained hereto representing fifteen hundred shares of said stock.    Said *pro rata* at no time to exceed the proportionate share of two thousand dollars at this, the time of our signing.    Signed at St. Louis, Mo., this 28th day of August, 1867."

This contract passed into the personal control of Mr. Holliday, who testified that he acted as attorney under the contract for Mr. Liggett and other parties; that one of the signers thereof was one W. S. Stewart, who subsequently died, and in 1886 Mr. Holliday proved up his claim for fees against his estate, and, as a voucher therefor, the contract was filed by Mr. Holliday in the probate court of the city of St. Louis. It also appeared in the evidence that, without the knowledge of Mr. Holliday, counsel for plaintiff in the present action had procured the contract from the probate court, and on the trial of this cause in the court below, after offering evidence tending to prove the genuineness of the signature of plaintiff in error found attached thereto, offered the contract as an admission in writing made by plaintiff in error to the effect that he was a stockholder in the express company, holding the number of shares set opposite his signature.    The trial court, over the objection that the statements in the agreement, being confidential communications between counsel and client, were privileged, admitted the same, and the question is as to the correctness of the ruling.

Counsel in their briefs have discussed at some length the provisions of the statute of Missouri on this subject, which declares that an attorney shall not be permitted to testify "concerning any communication made to him by his client in that relation or his advice thereon, without the consent of such client."    In view of the decision of the supreme court in *Insurance Co.* v. *Schaefer*, 94 U. S. 457, it would seem that the provisions of the state statute are not applicable to this question of evidence when the same arises in the courts of the United States.    In that case it was urged that, under the laws of Ohio, the communication offered in evidence was not privileged; but the supreme court said that—

"An examination of the Ohio statutes renders it doubtful whether the law is as the defendant contends; but, if it were, the court did right to exclude the testimony. The laws of the state are only to be regarded as rules of decision in the courts of the United States where the constitution, treaties, or statutes of the United States have not otherwise provided. When the latter speak, they are controlling; that is to say, on all subjects on which it is competent for them to speak. There can be no doubt that it is competent for congress to declare the rules of evidence which shall prevail in the courts of the United States not affecting rights of property, and, where congress has declared the rule, the state law is silent. Now, the competency of parties as witnesses in the federal courts depends upon the act of congress in that behalf passed in 1864, amended in 1865, and codified in Rev. St. § 858. It is not derived from the statute of Ohio, and is not subject to the conditions and qualifications imposed thereby. The only conditions and qualifications which congress deemed necessary are expressed in the act of congress, and the admission in evidence of previous communications to counsel is not one of them; and it is to be hoped that it will not soon be made such. The protection of confidential communications made to professional advisers is dictated by a wise and liberal policy. If a person cannot consult his legal adviser without being liable to have the interview made public the next day by an examination enforced by the courts, the law would be little short of despotic. It would be a prohibition upon professional advice and assistance."

In the case of *State* v. *Dawson*, 90 Mo. 149, 1 S. W. Rep. 827, the supreme court of that state held that the section of the state statute already cited is only declaratory of the common law; that "it is not designed to, nor does it, narrow the common-law privilege." So far, therefore, as the particular point now under consideration is concerned, the correctness of the ruling made by the trial court is not dependent upon the question whether the state statute is applicable or not. The general doctrine upon the subject is fairly stated in 1 Wait, Act. & Def. p. 468, in the following terms:

"It is the general rule that communications between attorney and client, in reference to all matters which are the proper subject of professional employment, are privileged. This includes all communications made by a client to his attorney or counsel, for the purposes of professional advice or assistance, whether such advice relates to a suit pending, one contemplated, or to any other matter proper for such advice or aid."

It is also well settled that the privilege is for the benefit and protection of the client. Thus it is said by the supreme court in *Chirac* v. *Reinicker*, 11 Wheat. 280:

"The general rule is not disputed, that confidential communications between client and attorney are not to be revealed at any time. The privilege, indeed, is not that of the attorney, but of the client, and it is indispensable for the purposes of private justice. Whatever facts, therefore, are communicated by a client to counsel, solely on account of that relation, such counsel are not at liberty, even if they wish, to disclose, and the law holds their testimony incompetent."

In considering questions of this kind, regard must be had to nature of the evidence sought to be elicited. It not unfrequently happens that deeds, contracts, or other written instruments may be delivered by a client to an attorney under such circumstances that the attorney cannot be compelled or permitted to produce the same in evidence against his

client at the demand of an adversary party. In this class of cases the deed or other written instrument is not itself privileged. It is merely the possession of the attorney that is protected. As he received the instrument by reason of the confidential relation of client and attorney, he cannot be compelled to yield up such possession at the demand of another, nor to reveal the contents of the paper. In such cases, however, it is open to the other party to prove, by any other competent evidence, the contents of the paper because the same are not, in and of themselves, privileged. The decisions in this class of cases do not touch the principle that is involved in the matter of confidential communications, whether oral or written, passing between client and counsel. In the latter instance, the privilege attaches to the communication itself. In order that there may be perfect confidence established between client and counsel, and upon considerations of enlightened public policy, the rule has been established that the client may freely communicate to his counsel all facts connected with the subject out of which grows the relation in question, and that the communication, thus confidentially made, cannot be used in evidence against him, unless he himself, by some unequivocal action on his part, deprives the communication of its privileged character, and thereby renders it competent evidence against himself. To fairly carry out the real purpose of the rule, it must be held that privileged communications are, in and of themselves, incompetent, regardless of the mere manner in which it is sought to put them in evidence. It is argued by counsel for defendant in error that the admission contained in this so-called "Fee Contract" was properly admitted, because it was produced by counsel for defendant in error, and not by Mr. Holliday, in whose custody it originally was, and that there was no breach of duty on part of the latter, in connection with the procurement and production thereof, by counsel for the trustee.

The admissibility of the communication, in our judgment, is not dependent upon the manner in which control thereof is obtained from the counsel, but upon the inherent character of the communication itself. If the admission or statement sought to be put in evidence was made by reason of the confidential relation existing between client and counsel, it becomes a privileged communication, and as such it is not competent evidence against the client. Its competency is not dependent upon the mere manner in which knowledge thereof may be obtained from counsel. The principle forbidding its use is not adopted as a mere rule of professional conduct on part of the attorney. It confers a right upon the client for his protection and advantage, and which he alone is authorized to waive. It will not do to hold that the communication loses its confidential and privileged character if knowledge thereof can be obtained by means which do not involve the counsel in a breach of professional duty. For illustration, a letter is written by a client to his attorney containing statements of a privileged nature. The counsel, having this letter on his person, meets with an accident, causing his death. Third parties in this way become possessed of the letter, and from them it passes to the possession of the adversary party. Has this letter lost

its privileged character and become competent evidence against the writer, simply because it passed from the possession of his counsel, to whom it was written, without fault on part of the attorney? Suppose that, upon a trial of a cause, an attorney is sworn as a witness, and he is asked to produce a letter written him by his client. He refuses, on the ground that it is a confidential communication. The trial court overrules the objection, and compels the production of the letter, which is filed as part of the evidence in the cause. An appellate court reverses the ruling of the trial court on this question, holding that the letter was privileged, and sends the case back for a new trial. On the second hearing, the attorney is not called as a witness, but the clerk, in whose custody the letter was placed on the first trial, is summoned by a *subpœna duces tecum*, and required to produce the letter in order that the same may be read in evidence. Is it possible that this letter, being a confidential communication between client and counsel, can be rightfully put in evidence upon the theory that the possession thereof was obtained without fault on part of the attorney?

The argument, founded upon the assumption that the admissibility of confidential communications between client and counsel is dependent solely upon considerations of the duty of counsel not to make known that which was communicated to him professionally, is, in our judgment, faulty, in that it ignores the main purpose of the rule, which is that the client shall be at liberty to freely communicate to his attorney knowledge of all matters connected with the business in hand upon the assurance that confidential communications thus made are privileged and cannot be used in evidence against him, unless he deprives them of their privileged character. In the case at bar, therefore, the question for determination is whether the admissions contained in the so-called "Fee Contract" are privileged. If they were, then it was error to admit the same in evidence, even though it may be true that possession of the contract was obtained by counsel for the trustee without any breach of professional duty on part of Mr. Holliday.

Extended discussion is not needed to show that the admissions contained in this contract are privileged. Suppose Mr. Holliday had been called as a witness by the trustee and he had testified that he had been retained by Mr. Liggett to defend him against all suits brought against him by the Bank of Commerce of Baltimore, or by the express company or its receiver, to enforce the calls up to that date made upon the capital stock of the company, and thereupon counsel for the trustee had asked him to state what admissions his client had made to him in regard to ownership of stock in the corporation and the number of shares held by him, certainly, upon objection made, it would have been held that admissions thus made were privileged. The fact that the admissions sought to be put in evidence are contained in a letter written to counsel, or in any other written instrument, does not change their character, so long as it appears that the letter, contract, or other writing is in fact a communication between client and counsel, and was created or called into existence by reason of that relation.

The main ground upon which the trial court held the contract admissible was that it "contained no admissions or statements made by a client to his attorney with a view of obtaining any advice thereon. The contract related wholly to the fee that should be paid, and the proportions in which the several signers should contribute to its payment. It stands, therefore, on the same basis as a contract made by the defendants with a person not an attorney, in relation to any other subject-matter which might have fallen into the plaintiff's hands." The contract to pay related wholly to the fee to be paid counsel, but the admissions in regard to the ownership of stock in the express company, which is the only part of the contract sought to be used in evidence in this case, certainly would not have been made, unless the relation of client and counsel had existed between the parties; neither is the protection of the rule limited to statements made by a client for the purpose of obtaining advice thereon from his attorney. A client may state the facts connected with a transaction touching which he desires the professional services of counsel, and may direct the action he wishes to have taken, and the communications thus made will not be stripped of their confidential character simply because the client may not technically ask or receive advice in regard thereto at the time the statements are made. Under the provisions of the Missouri statute, as well as under the common-law rule, the advice given by counsel is privileged as well as the communications made by the client; but to render the latter privileged it is not necessary that they should form the basis for the giving of advice on part of counsel. Many statements of fact are doubtless made by clients to counsel, by reason of the confidential relation existing between them, which are never made the subject of consultation nor of advice on part of counsel, nor the basis for professional action, but they are nevertheless privileged communications, because they owe their existence to the relation occupied by the parties when they were made.

The conclusion we reach is that the statements or admissions contained in the so-called "Fee Contract," being a communication from client to counsel, and which it is clear would not have been made had this relation not existed between the parties, were, when the same were made, confidential and privileged ; that being so, they were, for that reason, not competent evidence on behalf of the trustee in this case, it not appearing that the plaintiff in error had, by action on his part, deprived them of their privileged character; and that it was therefore error to admit the same in evidence in the present case.

The trial court relied upon the admissions contained in this contract for the purpose of connecting the defendant in the action with the stock books offered in evidence,—holding that under the circumstances of the case the plaintiff could not rely upon the mere identity of name, as a sufficient identification of the defendant as the person whose name appears on the stock books. It is strongly urged in argument by counsel for the trustee that the production of the stock books made out a *prima facie* case against the defendant, and therefore the admission of the incompetent evidence is not such an error as requires the reversal of the

case. Whether the mere identity of name is sufficient to justify the assumption that the entry in the books refers to the defendant in a given case may be dependent upon circumstances. It is entirely possible that in some instances the entry itself may be such as to point with sufficient certainty to the defendant, so that the trial court would be justified in holding, in the absence of contravening evidence, that the identification was sufficiently made out; but, on the other hand, from the fact that the name appearing on the stock books is one common to several persons in the community, or from other circumstances, it may well be that the trial court should demand some evidence of identification other than that appearing upon the books. In this case we do not have before us all the evidence introduced, and we cannot, therefore, say that from all the evidence the identity of the defendant with the person whose name appears upon the stock books was sufficiently established. It was a question of fact to be determined by the trial court, and we cannot say that the evidence adduced, aside from that which we hold was improperly admitted, was such that only one conclusion could be reached thereon. The error in admitting the privileged admissions found in the so-called "Fee Contract" was therefore one which demands a reversal of the judgment and a retrial of the case upon its merits.

In entering up judgment on the assessments sued for, the trial court allowed interest on the same from the time this action was brought. The trustee moved to set aside this judgment, and to enter a new judgment, including interest from the date of the decrees ordering the calls or assessments; which motion the court refused, and thereupon the trustee sued out a writ of error for the purpose of presenting this question to this court. In *Hawkins v. Glenn*, 131 U. S. 319, 9 Sup. Ct. Rep. 739, the supreme court cites the section of the Code of Virginia, which provides that, if an assessment upon shares "be not paid as required by the president and directors, the same, with interest thereon, may be recovered by warrant, action, or motion as aforesaid," and states that "interest would therefore seem chargeable from the date of the call." The statute of Virginia enacts that interest is recoverable if the assessment is not paid as required by the president and directors of the corporation, or, in other words, interest begins to run from the time fixed for payment of the particular call. It is a well-settled principle, in making assessments upon corporate stocks, that there must be equality in the burden imposed upon the stockholders. The time when a given assessment becomes payable may depend upon the provisions of the charter or by-laws of the particular corporation, or upon the terms of the call itself, or possibly on the practice adopted in collecting assessments by the parties charged with that duty. Thus the charter or by-laws of a corporation may provide that all assessments shall be payable in a certain number of days after the call is ordered, or after notice given by publication or otherwise, or, if the charter and by-laws are silent on the subject, the calls as ordered from time to time may fix the date of payment. The general rule of law, under the statute of Virginia, is that interest is recoverable from the time of default in payment; but the

stockholder is not in default until the date when the particular call requires payment to be made. Thus the time when interest becomes chargeable is ordinarily dependent upon a question of fact to be determined according to the evidence in the case. To determine the time when the calls made upon the capital stock of the National Express & Transportation Company became payable, so as to create a default against nonpaying stockholders, it is necessary to know what the provisions of the charter and by-laws may be upon this subject. If, upon the production thereof, it should appear that they are silent upon the subject, then, under the terms of the calls themselves, it would seem, in the language of the supreme court in *Hawkins* v. *Glenn, supra,* that interest is chargeable from the date of the call. The record before us does not contain the complete charter and by-laws of the express company. Whether the same were introduced before the trial court, we do not know. The bill of exceptions does not purport to set forth all the evidence introduced on the trial, but, on the contrary, affirms that it contains only a portion thereof. It may well be, therefore, that the charter and by-laws were in evidence before the trial court, and that the provisions thereof were such as to justify the ruling made on this question. Whether there is error in the ruling depends upon the state of facts made to appear before that court, and we do not think we are sufficiently advised upon that point to authorize us to consider the question. As it does not, therefore, affirmatively appear that there was error in the ruling complained of, the same must be affirmed.

For the error pointed out in the admission of evidence the judgment is reversed, and the case is remanded to the circuit court for a new trial.