In the Matter of ABRAHAM MYER et al., Judgment Creditors, against JEROME MYER et al., as Trustees for JULIUS MYER under a Trust Indenture Dated April 21, 1942, Judgment Debtors.

Supreme Court, Special Term, Bronx County, May 2, 1947.

*Abraham J. Halprin* for judgment creditors.

*Jay Leo Rothschild* for judgment debtors.

SHIENTAG, J. This·is a motion brought on by order to show cause, asking that the judgment debtor Bernard Myer be punished for his civil and criminal contempt in failing to obey an oral order of Mr. Justice HOFSTADTER.

The judgment debtors Jerome, Philip and Bernard Myer are trustees of an *inter vivos* trust set up by the incompetent Julius Myer, the father of the defendants. The corpus of this trust consists of 50% of the capital stock of Myer 1890 Bottling Co., Inc., one of the judgment creditors. The individual judgment creditors, Abraham and Israel Myer, owned the balance of the stock, which consists of fifty shares.

During the life of Julius Myer, the defendant trustees are under a duty to pay the income on the stock to the settlor, the incompetent Julius Myer. In April, 1945, after Julius Myer had been declared incompetent, the defendant judgment debtors brought a proceeding to dissolve the bottling company pursuant to section 103 of the General Corporation Law. After a trial before a referee and the approval of the referee's recommendations by the court (Mr. Justice NULL), costs were awarded against the judgment debtors, amounting to $10,620.

Supplementary proceedings were brought by the judgment creditors and Bernard Myer, one of the debtors, was served with a subpoena requiring his attendance for examination on January 17, 1947. The only asset which the defendants held as trustees was fifty shares of stock of the bottling company. They had ultimate reversionary interests in these shares of stock, but not an immediate interest.

It appears from the examination that at the time this proceeding was brought to dissolve the corporation, a written retainer was made by the trustees with their counsel, Mr. Rothschild, and the testimony is that under that written retainer the entire corpus of the trust was delivered to Mr. Rothschild to secure payment of his counsel fees. In the supplementary proceedings examination the judgment debtor was asked to show a copy of the retainer. The debtor refused on the ground that the subject matter of a retainer is confidential and as matter of law a lien for legal services exists, no matter what the terms of the retainer are.

The parties appeared before Mr. Justice HOFSTADTER, and the objection was again made to the production of the retainer " on the ground that Mr. Rothschild has a general lien for services rendered and that the terms of the retainer are immaterial ". The objection was overruled, and Bernard Myer

was orally told to produce the retainer on an adjourned date of the examination, January 14, 1947. Thereafter, on January 29, 1947, the debtor's counsel entered an order embodying the ruling of Mr. Justice HOFSTADTER directing the production of the retainer. An appeal was taken then to the Appellate Division from this order. By order dated March 21, 1947, the Appellate Division dismissed the appeal, stating that " * * * there should be no order entered upon a ruling on questions propounded in supplementary proceedings. Such ruling is not appealable and may not be made so by the entry of an order." (271 App. Div. 1004.)

After the case had been decided by the Appellate Division, the adjourned hearing on the examination was held on March 27, 1947. Again there was a refusal to produce the retainer " on the ground that it is a confidential communication." Apparently no further order was made by Judge HOFSTADTER on this adjourned hearing. At that time, on the record the defendant's counsel sought to amplify the reasons for advising Mr. Myer not to produce the retainer. The amplification reads as follows: "1) That the retainer is a confidential communication between his attorney and Mr. Myer and is privileged on that ground; 2) That disclosure of that retainer would make available to opposing counsel the plans and purposes for which counsel was employed and retained; 3) That said retainer concerns itself with plans and purposes not only with respect to the action in which judgment has been entered against Mr. Myer and his brothers, as Trustees, but with respect to other actions; 4) That said retainer concerns itself with matters in which Mr. Myer and his brothers are parties as individuals, whereas the judgment herein is against them only as trustees; and 5) That the retainer is a confidential communication within the meaning of Civil Practice Act, Section 353."

The motion as it stands before me is to punish for contempt for failure to obey an oral directive given in Special Term, Part II, by the Justice there presiding. The refusal is conceded, and ordinarily an order holding the defendant in contempt would follow as a matter of course. The dismissal of the appeal, however, by the Appellate Division leaves a judge of coordinate jurisdiction with Mr. Justice HOFSTADTER in a somewhat embarrassing position. This embarrassment arises from the uncertainty whether the practice established by the Appellate Division decision means that on a motion to punish for contempt, based on the failure to obey an order made in

Special Term, Part II, the justice hearing the motion should grant the motion *pro forma* or should review the propriety of the directive on its merits. Since the granting of an order punishing for contempt involves the exercise of discretion, I feel constrained to decide the case on the merits even though it in one sense involves reviewing what another justice has decided. On the merits we have a situation in which trustees have confessedly disposed of the entire corpus of the trust for the purpose of granting a lien to their attorney to secure him for his fees in bringing an action which may well be held not to have been for the benefit of the trust, but on the contrary may be held on an accounting to be entirely for the benefit of themselves. It is a familiar principle of trust law that the propriety of fees to be paid for legal services of trustees must be passed on by the court. It is hard to see how there can be any secrecy under the plea of legal privilege about such contracts.

Section 353 of the Civil Practice Act provides: " An attorney or counselor at law shall not be allowed to disclose a communication, made by his client to him, or his advice given thereon, in the course of his professional employment * * *." The question is whether a retainer agreement as such is necessarily a confidential communication and hence that the terms of it are protected from disclosure. The question of privilege has always been a difficult one when a borderline case has been under discussion. Where there is a conflict of personal interest and public policy, it is frequently necessary to make nice distinctions. As was said by Mr. Justice CARDOZO in *Clark* v. *United States* (289 U. S. 1, 13) :" * * * the recognition of a privilege does not mean that it is without conditions or exceptions. The social policy that will prevail in many situations may run foul in others of a different social policy, competing for supremacy. It is then the function of the court to mediate between them, assigning, so far as possible, a proper value to each * * *."

It is true that under certain circumstances the contents of a retainer agreement have been held to be protected by the privilege statute (*Liggett* v. *Glenn*, 51 F. 381). On the other hand, there have been cases also involving retainer agreements and the delivery of money in which it has been required to make a full disclosure (*Shafer* v. *Utica Mutual Insurance Co.*, 248 App. Div. 279; *Phoebus* v. *Webster*, 40 Misc. 528; *Foster* v. *Wilkinson*, 37 Hun 242).

It is clear that if the parties can transfer all their property to their counsel under an agreement the terms of which they are not required to divulge, and which the attorney is not allowed to divulge under the statute, the creditors of the client would be entirely without remedy. The case at bar is one of the borderline cases in which, regardless of general statements of privilege, sound public policy requires that the retainer be produced.

The motion to punish for contempt is granted. Bernard Myer is fined $50 and is directed to produce the written retainer referred to at Special Term, Bronx County, on May 15, 1947, at 11:00 A.M. The order to be entered hereon should provide that in the event the fine is not paid and the order obeyed on or before the above date and hour, an ex parte commitment may issue. Settle order.