**PONDROM et al. v. GRAY. (No. 1365.)\***

(Court of Civil Appeals of Texas. Beaumont. Nov. 9, 1926. Rehearing Denied Dec. 15, 1926.)

**1. Vendor and purchaser ⚖➝232(9)—Defendants held not innocent purchasers when plaintiff was in possession through tenant, .though plaintiff's deed was unrecorded.**

In trespass to try title, defendants *held* not innocent purchasers of land, where plaintiff, holding. under unrecorded deed, was in possession through his tenant, inquiry of whom would have shown that he held under plaintiff.

**2. Vendor and purchaser ⚖➝232(1)—One purchasing apparent title, as against one in possession, cannot be innocent purchaser, if he fails to make inquiry.**

One purchasing title to land, as against one in possession, either in person or through tenant, cannot be innocent purchaser, as against holder, if he fails to make inquiry of holder, unless claimant shows that inquiry would not have developed facts putting him on notice.

**3. Vendor and purchaser ⚖➝244—As respects notice, tenant held, under evidence, to be holding land under plaintiff, and not his grantor.**

As respects notice, tenant, in possession of land at time of defendant's deed thereto, *held,* under evidence, to be holding under plaintiff, though plaintiff's deed was unrecorded.

**4. Adverse possession ⚖➝115(1) — Evidence held not to raise issue for jury as to whether defendants held under 5-year statute of limitations.**

In trespass .to try title, filed September 27, 1917, where defendants did not show payment of taxes for year 1912, refusal to submit to jury question whether defendants had title under 5-year limitation *held* not error.

**5. Limitation of actions ⚖➝39(3)—Trust agreement in land, asserted in cross-action to trespass to try title, held barred by 4-year limitation (Rev. St. 1925, art. 5529).**

In trespass to try title, where plaintiff claimed under deed of June 23, 1911, cross-action, alleging that deed was intended to convey land in trust to plaintiff, filed April 3, 1925, *held* barred by 4-year limitation, under Rev. St. 1925, art. 5529.

**6. Mortgages ⚖➝39—Neither evidence or pleadings raised issue that deed under which plaintiff claimed was intended as mortgage.**

In trespass to try title, where plaintiff claimed under absolute deed, neither evidence or pleadings *held* to raise issue that deed was intended as mortgage, other than that plaintiff held in trust for his grantor.

**7. Trespass to try title ⚖➝44—Peremptory instruction to return, verdict for plaintiff for rents and damages in named sum held not error under evidence.**

In trespass to try title, where there was no dispute as to rental value of land and quantity was sufficiently certain, there was no error in peremptorily instructing jury to return verdict for plaintiff in named sum.

**8. Appeal and error ⚖➝1033(8)—Defendants cannot complain that verdict was incorrectly calculated, where error favors them.**

In trespass to try title, where rental and acreage were certain, defendants cannot complain of error in calculation of verdict favorable to them.

**9. Trial ⚖➝68(1)—Refusal, after close of case, to permit reopening of case to read testimony given at former trial and introduce-additional evidence, held not abuse of discretion.**

In trespass to try title, refusal, after close of evidence, and plaintiff. had moved for instructed verdict, to permit reopening of case to permit defendant to read testimony given at previous trial and to introduce additional evidence, *held* not abuse of discretion.

**10. Witnesses ⚖➝202—Proof by plaintiff's attorney of what occurred immediately before drawing deed held properly excluded, as privileged communication.**

In trespass to try title,.sustaining plaintiff's objection to defendants' testimony, offering to prove by plaintiff's attorney conversation as to what happened immediately before signing deed, *held* not error; communication being privileged.

**11. New trial ⚖➝172—Failure to object to testimony of attorney at former trial held not waiver of right to object at second trial.**

In trespass to try title, failure of plaintiff to object to testimony of his attorney at former trial held, under facts, not waiver of right to object at second trial.

**12. Appeal and error ⚖➝1056(1)—Error, if any, in excluding evidence of attorney for grantee as to communication between parties prior to execution of deed, held harmless.**

In view of presumption that deed was intended to have legal effect of its terms, error, if any, in excluding evidence of grantee's attor-

⚖➝For other cases see same topic and KEY–NUMBER in all Key-Numbered Digests and Indexes
\*Writ of error granted February 9, 1927.

ney as to communication between parties prior to execution of deed, *held* harmless.

**13. Trespass to try title** ☞41(2)—**Plaintiff shows prima facie right to recover when his title, emanating from common source, is superior to defendant's.**

When plaintiff has proved that he and defendant claimed title from common source, and that his title is superior, he shows prima facie right to recover.

**14. Trespass to try title** ☞41(2)—**Rule that superior title, emanating from common source, shows prima facie right to recover, is rule of evidence.**

Rule that party showing superior title, emanating from common source, shows prima facie right to recover, is rule of evidence, and not of estoppel.

**15. Trespass to try title** ☞41(2)—**Defendant, to defeat plaintiff's prima facie case, must show superior outstanding title, and that he is holder thereof.**

Where plaintiff shows superior title, emanating from common source, to defeat his prima facie right to recover, defendant must show that there is superior outstanding title, and that he is holder thereof, or that it has never vested in common source.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Trespass to try title by H. Lawson Gray against W. L. Pondrom receiver, and others. From the judgment for plaintiff, defendants appeal. Reformed, and, as reformed, affirmed.

C. W. Howth, E. L. Nall, and King & Jackson, all of Beaumont, for appellants.

E. E. Easterling and Orgain & Carroll, all of Beaumont, for appellee.

O'QUINN, J. This is a suit in trespass to try title to 100 acres of land, more or less, a part of the J. S. Johnson one quarter league in Jefferson county, Tex., brought by appellee, H. Lawson Gray, against the appellants. The suit was filed in the district court of Jefferson county, Tex., September 27, 1917. The cause was tried on plaintiff's third amended original petition, filed April 9, 1925, which contained the usual allegations of trespass to try title, and for rents in the sum of $4,000.

The defendants appellants went to trial on their sixth amended original answer, filed April 3, 1925, by which they pleaded a general denial and not guilty, and the 2, 3, 4, 5, and 10 years' statutes of limitation, and, by way of cross-action, defendants set up an action of trespass to try title against plaintiff to the land in question, and, further, by way of cross-action, pleaded that the deed under which plaintiff, H. Lawson Gray, claimed title to the land from Sam Lee Gray, dated June 23, 1911, was not intended as an absolute conveyance, as denoted by the terms of the deed, but that said deed was, in fact, a mortgage given by said Sam Lee Gray to said H. Lawson Gray to secure the payment of certain sums of money owed to said H. Lawson Gray and by him to be advanced to said Sam Lee Gray, and that said land was conveyed by said Sam Lee Gray to said H. Lawson Gray in trust by an agreement in writing, the allegations in said cross-action as to the said trust agreement being as follows:

"(d) That the instrument dated June 23, 1911, and relied upon by the plaintiff, was not a conveyance of the property, but was in truth and in fact a mortgage given by said Sam Lee Gray to the plaintiff to secure the said plaintiff in the collection of certain alleged sums of money claimed to have been advanced to said Sam Lee Gray, and certain advancements to be made in the future, and it was agreed and understood between the said Sam Lee Gray and H. Lawson Gray, before and at the time of the execution of the said alleged instrument, that same was solely for the purpose of securing the plaintiff in the payment of money, and that the title to said property remained in the said Sam Lee Gray, and that the said Sam Lee Gray could at any time pay off any sums of money owing the plaintiff and receive a reconveyance of his property.

"(e) That in pursuance of said agreement, and to give written evidence thereof, the said plaintiff herein and said Sam Lee Gray entered into a written contract or declaration of trust, contemporaneously with said purported deed, and as a part of the same transaction, by the terms of which it was mutually agreed in writing that said conveyance constituted only a security for indebtedness, and that the said Sam Lee Gray could at any time pay to the plaintiff any sum then due and receive a reconveyance of his property, which said agreement, although made, executed, and delivered to the said Sam Lee Gray, has never been recorded, and these defendants allege and charge that same passed into the hands of the plaintiff, as representing the estate of his brother, Sam Lee Gray, or was destroyed or suppressed by the plaintiff, and plaintiff is hereby notified to produce the original of said instrument on the trial, otherwise secondary proof of its contents will be made.

"(f) These defendants further say that among the provisions of said contract are the following:

"'The State of Texas, County of Jefferson.

"'This memorandum of an agreement between Sam Lee Gray and H. Lawson Gray, executed this 23d day of June, A. D. 1911, witnesseth:

"'Whereas, the said Sam Lee Gray has this day conveyed to H. Lawson Gray certain property more fully described in the deed and being the same land set apart to the said Sam Lee Gray on partition between Geo. C. O'Brien, H. L. Gran, and Sam Lee Gray, now this instrument is executed to declare the trust upon which said conveyance was executed, and the same are as follows:

"'(1) That said H. Lawson Gray is hereby authorized to sell or exchange the said land, or to convey same for any purpose deemed by him advantageous to the interest of said Sam Lee Gray.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

" '(2) Out of the proceeds of such sales the said H. Lawson Gray may retain a sufficient sum to compensate him for outlays which he has made or may then have made for the account of said Samuel Lee Gray or invest for the benefit of him, the said Samuel Lee Gray.

" '(3) The said Samuel Lee Gray shall have the right to accounting of said H. Lawson Gray at periods of not less than six months apart and may at his option demand and have surrender of said property at any time on the payment of the lawful charges of the said H. Lawson Gray against it.

" '(4) It is intended that the power of sale of said H. Lawson Gray during the continuance of this trust shall be complete and remain in operation so long as there remain any lawful charges of said H. Lawson Gray against it, and it is understood that the said H. Lawson Gray shall promptly sell off enough of said property to pay all delinquent taxes thereon.' "

To the cross-action of defendants, alleging that the deed from Sam Lee Gray to H. Lawson Gray, dated June 23, 1911, was not an absolute deed as it purported to be, but that same was made in pursuance of the written agreement alleged by defendants (above set out), plaintiff, H. Lawson Gray, by his third supplemental petition filed April 9, 1925, denied the allegations contained in said cross-action, and specially pleaded the statute of 4 years' limitation in bar of defendants' right to ingraft such trust upon his deed to said land, and that defendants were, by the statute of 4 years, barred from recovering the land under the facts alleged in their cross-action.

The cause was tried on April 9, 1925, before the court with a jury, and after the evidence was closed on April 15, 1925, the court instructed the jury to return a verdict for the plaintiff appellee for the land in controversy, and for the sum of $2,012.20 as rents and damages, which was done, and judgment rendered accordingly. Motion for a new trial was overruled, and the case is before us on appeal.

[1] Appellants present 11 propositions, based upon 67 assignments of error. Their first proposition urges that the court erred in refusing to submit to the jury the question whether or not they purchased the land in question from Sam Lee Gray in good faith, for a valuable consideration, and without notice of the prior unrecorded deed from Sam Lee Gray to H. Lawson Gray, appellee.

Both parties claim through Sam Lee Gray. On June 23, 1911, for a valuable consideration, he executed and delivered a warranty deed to H. Lawson Gray for the land in question. This deed was placed of record June 28, 1911. On June 26, 1911, for a valuable consideration, Sam Lee Gray executed a warranty deed to W. P. H. McFaddin, V. Wiess, and W. W. Kyle, trustees for the McFaddin, Wiess & Kyle Land Company, conveying the same land. This deed was recorded the day of its execution, June 26,

1911. At the time of the execution of both deeds and for some time prior thereto, one John Puccio was in possession of the land under a rental contract with H. Lawson Gray. When the deed to W. P. H. McFaddin et al. was executed and delivered by Sam Lee Gray, he also gave a written statement or order to McFaddin to Puccio, directing him to turn the property over to McFaddin which he did, and appellants went into possession. Appellants contend that these facts raised an issue of fact that should have been submitted to the jury as to whether they were innocent purchasers. We think the contention should be overruled. While it is true that, at the time Sam Lee Gray executed the deed to appellants, the deed to H. Lawson Gray was not of record, still he was in possession of the land by and through his tenant, Puccio. McFaddin made no inquiry of either Puccio or H. Lawson Gray, but bought without any inquiry whatever as to whose tenant or by what right Puccio was on the land. If at the time he bought from Sam Lee Gray he had made inquiry of Puccio, he would have found that Puccio was on the land under a contract with H. Lawson Gray, and further inquiry of H. Lawson Gray would have given McFaddin the information that he (H. Lawson Gray) had a deed to the land from Sam Lee Gray of date June 23, 1911.

[2] It has been universally held in this state that one purchasing apparent title to land as against one in possession, either in person or through a tenant, cannot be an innocent purchaser as against the holder of the land, if he fails to make inquiry of such holder, unless the one claiming to be an innocent purchaser shows by evidence that inquiry of the person in possession would not have developed facts putting him upon notice of the title of the possessor. Watkins v. Edwards, 23 Tex. 443; Wimberly v. Bailey, 58 Tex. 227; Bounds v. Little, 75 Tex. 320, 12 S. W. 1109; Collum v. Sanger, 98 Tex. 165, 82 S. W. 459, 83 S. W. 184; Paris Grocery Co. v. Burks, 101 Tex. 111, 105 S. W. 174. The assignment is overruled.

[3] Appellants' second proposition asserts that the court erred in refusing to submit to the jury the question of whether John Puccio, who was in possession of the land in controversy at the time appellants purchased same from Sam Lee Gray, was holding the land as the tenant of H. Lawson Gray or Sam Lee Gray. This assignment is overruled.

The testimony of Puccio is that he rented the land from H. Lawson Gray, and was occupying it as his tenant. He was paying $6 a month for the property, and all his dealings were with H. Lawson Gray. He said that he did not know Sam Lee Gray. But appellants say that it became a question of fact for the jury whether H. Lawson Gray rented the land to Puccio as the agent of Sam Lee Gray or for his own account. If it be conceded that at the time H. Lawson

Gray rented the land to Puccio he did so as the agent of Sam Lee Gray, still when Sam Lee Gray conveyed the land to H. Lawson Gray, which was prior to the time McFaddin purchased same, Puccio thereupon became the tenant of H. Lawson Gray. The undisputed record is that, had inquiry been made of Puccio, it would have developed the fact that he was holding under contract with H. Lawson Gray, and not Sam Lee Gray, for, as a matter of law, when Sam Lee Gray conveyed the land to H. Lawson Gray, Puccio thereupon became a tenant of H. Lawson Gray and ceased to be the tenant of Sam Lee Gray. Therefore inquiry of Puccio by McFaddin at the time he took the deed from Sam Lee Gray would have developed that he was the tenant of H. Lawson Gray, and inquiry of H. Lawson Gray would have developed his title.

[4] Appellants' complaint that the court erred in refusing to submit to the jury the question whether they had title to the land under the 5 years' statute of limitation must be overruled. W. P. H. McFaddin, witness for defendants, testified:

"In 1911, I rendered 662.39 acres. I rendered it because I was superintendent of the mill and general manager, and had it done; if I had it done, I supervised it. I rendered it for the McFaddin, Wiess & Kyle Land Company. I am talking when I use 'I' or 'we' for the McFaddin, Wiess & Kyle Land Company. I paid the 1911 taxes January 12, 1912. In 1912, I rendered 640 acres. In 1911, 662.39. * * * I rendered less land in 1912 than I rendered in 1911. * * * I never sold any at all."

The suit was filed September 27, 1917. It was necessary for appellants to show payment of taxes for the year 1912. The above testimony of McFaddin shows that appellants did not increase their tax rendition on the Johnson, so as to include the land in controversy until 1913. It also appears that appellants did not sell any of their lands on this survey during the years 1911, 1912, and 1913. We do not think the evidence raised the issue of the payment of taxes for the year 1912. Bassett v. Martin, 83 Tex. 344, 18 S. W. 587. We so held on a former appeal. Langham v. Gray (Tex. Civ. App.) 227 S. W. 741.

[5] By their fourth proposition, appellants complain that the court erred in refusing to submit to the jury the question of whether H. L. Gray, appellee, acquired the fee-simple title to the land in controversy by virtue of the deed from Sam Lee Gray to H. L. Gray, or whether appellee was merely holding the land in trust for Sam Lee Gray; and by their tenth proposition, that the court erred in refusing to submit to the jury the question whether or not the deed from Sam Lee Gray to H. L. Gray was intended as a mortgage to secure the payment of some indebtedness by Sam Lee Gray to H. L. Gray. We will consider these propositions together. We think they should be overruled. As we view the record, there was no evidence raising the issue that the deed from Sam Lee Gray to H. Lawson Gray, dated June 23, 1911, was intended to convey the land in trust by Sam Lee Gray, but, if there was any evidence tending to show such trust, same was barred by the statute of 4 years' limitation, which was specially pleaded in defense by appellee. Appellee contends that under the pleadings and evidence appellants' cross-action seeking to show that the deed from Sam Lee Gray to H. Lawson Gray, dated June 23, 1911, was not an absolute deed, but was made in pursuance of the certain trust agreement, was barred by the 4 years' statute of limitation, because first, under the pleadings of appellants setting up said cross-action, said alleged trust was created by said written agreement of June 23, 1911, and it was not sought to be enforced by appellants until the filing of their cross-action setting up the same on the 3d day of April, 1925, and, second, the undisputed evidence shows that the trust agreement in connection with the deed from Sam Lee Gray to appellee has been continuously denied and repudiated by appellee from said 23d day of June, 1911, to time of the trial of the suit; hence that, if said trust agreement ever existed, it was therefore barred by the 4 years' statute of limitations.

[6] The deed from Sam Lee Gray to H. Lawson Gray, appellee, was dated June 23, 1911. The trust agreement alleged and asserted by appellants was of the same date. Appellants' cross-action setting up said trust agreement, by which they sought to draw to themselves the legal title to the land in controversy, was filed April 3, 1925. The transcript contains appellants' fourth amended original answer, containing a cross-action setting up said trust agreement, which was filed June 4, 1919, but this was dismissed by appellants on June 5, 1919, which is evidenced by a trial court docket entry in evidence. It is undisputed that appellants knew of H. Lawson Gray's claim to the land and of the deed from Sam Lee Gray to H. Lawson Gray from and after less than a week of the date of said deed. The record is ample to show that H. Lawson Gray was continuously claiming the land. It was more than 7 years from the date of the deed to appellants until this suit was filed, and more than 13 years from the date of the deed until the filing of the cross-action by appellants. This cross-action, based upon the trust relationship alleged, and its repudiation, is governed by the 4 years' statute of limitations. Article 5529 (5690), Revised Civil Statutes 1925; Emmons v. Jones (Tex. Civ. App.) 246 S. W. 1052; McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 319; Farmers' Loan & Trust Co. v. Beckley, 93 Tex. 272, 54 S. W. 1027; Green v. Churchwell (Tex. Civ. App.) 222 S. W. 341; Clark v. Haney, 62 Tex. 511,

50 Am. Rep. 536; Chicago, T. & M. C. Railway v. Titterington, 84 Tex. 218 (225) 19 S. W. 472, 31 Am. St. Rep. 39. The only pleadings relied upon by appellants in their cross-action to show that the deed from Sam Lee Gray to H. Lawson Gray, dated June 23, 1911, was intended as a mortgage, consisted of an express trust agreement, which agreement on its face showed that the land was conveyed in trust on certain conditions therein named, and hence appellants were without pleadings setting up that said deed was intended as a mortgage, other than as pleaded by the trust agreement (see pleading set out in statement above). Moreover, there was no evidence raising the issue that said deed was intended as a mortgage.

[7, 8] Appellants' fifth proposition says that the court erred in peremptorily instructing the jury to return a verdict for appellee for rents and damages in the sum of $2,012.20, insisting that same was a question for the jury. It is thought the proposition is without merit. The only testimony in the record as to the rental value of the land was that of W. P. H. McFaddin, witness for appellants, who testified:

"The reasonable rental value of the high land at that time (1911) was about $5 an acre, and the marsh wasn't worth' anything scarcely, 15 cents an acre. As to its sustaining that value since then, I think it is about that. That is about the way that land rents. You can't pay any more for it and make anything out of it."

McFaddin testified that there were 35 acres of high land in the tract. The deed called for 100 acres, more or less. Appellants purchased the land on June 26, 1911, and McFaddin testified that they immediately took possession. The suit was filed September 27, 1917. The pleadings of the parties were amended from time to time, and the judgment from which this appeal was taken was rendered April 15, 1925. The testimony showing without dispute that the rental value of the land per acre was $5 for the high land and 15 cents per acre for the marsh, and there being 35 acres of the high land, leaving 65 acres of marsh, the amount instructed by the court is considerably less than the amount would be if correctly calculated for the time from appellants' taking possession to the date of the judgment. This, however, is in favor of appellants, of which they cannot complain, and appellee makes no complaint. There being no dispute as to the rental value of the land per acre, and the quantity of land being sufficiently certain, it became a mere matter of calculation, and there was no question of fact to submit to the jury.

[9] Appellants' sixth proposition is:

"The court abused its discretion in refusing to permit appellants to read from the testimony of a previous trial of this case the testimony of the witness John Puccio, who, at the time of this trial, was admitted to be dead."

Abstractly stated and without explanation, the proposition might show error, but, when viewed in the light of the record, we do not think any error is shown. At a former trial of this case, Puccio testified fully, and his testimony was preserved in the record of that trial. In the instant trial both appellants and appellee introduced portions of Puccio's testimony given at the former trial—full opportunity was had for the introduction of any part of the testimony desired. At the time the request, the refusal of which is complained of, was made, the evidence had been concluded, and appellee had moved for an instructed verdict, and said motion discussed by both parties. It was a matter of the court's discretion whether he would reopen the case for the introduction of other evidence, and we do not think an abuse of such discretion is shown. A mere reading of appellants' proposition would create the impression that the court excluded the testimony because the witness was dead, and therefore the evidence offered was not admissible, but the record discloses that it was refused on the ground that both parties had closed the evidence and appellee's motion for an instructed verdict fully argued.

In Texas & P. Railway Co. v. Curry, 64 Tex. 85, it is said:

"Where there was a failure to use due diligence to offer evidence at the proper time, it was not error to refuse to admit it during the argument of the case."

See, also, Cotton v. Jones, 37 Tex. 34; Pontiac Buggy Co. v. Dupree, 23 Tex. Civ. App. 298, 56 S. W. 703; St. Louis S. W. Railway Co. v. Johnson (Tex. Civ. App.) 94 S. W. 162.

By the seventh proposition, appellants assert that the court abused his discretion in refusing to permit appellants to prove by its witness McFaddin that he presented an order from Sam Lee Gray to John Puccio, directing Puccio to deliver possession of the land in controversy to McFaddin, and that Puccio honored the order. The witness McFaddin was on the stand twice, and testified at length—his testimony covers more than 30 pages of the statement of facts. After both parties had closed, and appellee had filed a motion for an instructed verdict, and same had been discussed by counsel for both parties, the request was made to place the witness back on the stand. It is the general rule that it is within the discretion of the court whether the case shall be reopened and further evidence introduced after the testimony has been closed. See authorities next supra. Furthermore, the witness, we think, had already testified fully as to this matter. He testified:

"At the time I bought this land from Sam Gray he claimed he had a tenant on the land,

an Italian by the name of Puccio, I believe his name was. I received an order or paper in writing from Sam Gray, directing Puccio to turn the property over to me. I took it down and showed it to Puccio, and he said, 'All right.' He said he had a crop down there and that he would like to have time to get his crop off, and I told him all right; that he could have all the time he wanted. I said that Sam Gray gave me an order on Puccio in writing. Sam Gray told me he had a tenant and told me who it was, and Puccio told me he had the land in cultivation and had a crop on it, and when I showed him that order he said, 'All right; I want a chance to get my crop off.' This is the order Sam Gray gave me to Puccio, and I produced that to Puccio, and Puccio acknowledged it and honored it."

The order itself was then introduced. No abuse of discretion is shown, and the proposition is overruled.

[10] Appellants' eighth and ninth propositions are:

Eighth:

"The court erred in refusing to permit appellants to prove by A. D. Lipscomb that he prepared the deed from Sam Lee Gray to H. L. Gray to the land in question, and that at the time he prepared said deed he also prepared another instrument in writing showing that the deed from Sam Lee Gray to H. L. Gray was merely intended to convey the naked title to H. L. Gray to be held in trust for the benefit of Sam Lee Gray."

Ninth:

"The court erred in refusing to permit the appellants to prove by A. D. Lipscomb conversation between himself and H. L. Gray and Sam Lee Gray, which occurred immediately before he drew the deed from Sam Lee Gray to H. L. Gray (as more fully shown by assignment of error No. 19, par. 19, appellants' motion for new trial)."

We will consider the above propositions together. The record discloses that Judge Lipscomb was, and for many years had been, the legal advisor and attorney for H. L. Gray, and that in the drawing of the deed and the matters pertaining thereto he was acting as the legal advisor of said H. L. Gray. That being true, all matters communicated between Judge Lipscomb and H. L. Gray pertaining or relative to the matters in question were privileged communications, and the court did not err in sustaining appellee's objection to the proffered testimony and excluding it. Greenleaf on Evidence, §§ 237, 238; Warner Elevator & Mfg. Co. v. Houston (Tex. Civ. App.) 28 S. W. 410; McIntosh v. Moore, 22 Tex. Civ. App. 22, 53 S. W. 611; Emerson v. Scott, 39 Tex. Civ. App. 65, 87 S. W. 369; Downing v. State, 61 Tex. Cr. R. 519, 136 S. W. 472; Neal v. Patten, 47 Ga. 75; Liggett v. Glenn, 51 F. 381, 2 C. C. A. 286, 298; Phœnix Ins. Co. v. Wintersmith (Ky.) 98 S. W. 987.

In the case of Warner Elevator & Mfg. Co. v. Houston, supra, it is said:

"The rule is well established, upon the ground of public policy, that an attorney will not be allowed to disclose confidential communications made to him by his client, or matters that come within the ordinary scope of his professional employment, either from a client, or on his account and for his benefit, in the transaction of his business; or, which amounts to the same thing, if he commits to paper, in the course of his employment on his client's behalf, matters which he only knew through his professional relation to the client, he is not only justified in withholding such matters, but bound to withdraw them, and will not be compelled to disclose the information or produce the papers in any court of law or equity, either as party or as witness."

McIntosh v. Moore, supra, holds:

"An attorney may not testify as to inquiry made by the client during consultation as to what effect the destruction of testator's will would be."

Judge Key, in Emerson v. Scott, supra, says:

"An attorney to whom testator, during consultations as to drawing the will, stated that the debt of the plaintiff released by the will was secured by a deed of plaintiff's property to defendant, may not, in an action by plaintiff against the heirs and devisees of testator to cancel the deed, testify to such fact."

Appellants, in their brief, make the statement that "the law with respect to privileged communications does not apply to attorneys employed to draw papers, such as deeds, mortgages, or other similar instruments in writing," and cite numerous authorities to sustain same. We have examined these citations, and do not find them in point, when considered in relation to the facts in the instant case.

But appellants insist that, the witness Judge Lipscomb having testified on a former trial of the case with respect to the matters here sought to be proven by him without objection on his part or that of appellee, the privilege was waived, and that the court erred in not overruling appellee's objection to the proffered testimony and excluding same.

[11] Without stating his evidence bearing on this question, we will say that the record reflects that at the first trial of this cause Judge Lipscomb was a witness, introduced by appellants, and that he testified as shown by appellants' bill of exception No. 8, the substance of which testimony we do not deem necessary to state; that upon a second trial appellants again placed Judge Lipscomb on the stand as a witness for them, and at this time he refused to testify about the transaction, for the reason that the matters inquired about were privileged between him and his client, H. Lawson Gray. The court ruled the testimony admissible, and when Judge Lipscomb still refused to testify concerning the matters sought to be elicited, the court held him in contempt and permitted the announcement of ready for trial to be with-

drawn and continued the case. Judge Lipscomb sought to free himself from the judgment of contempt by a writ of habeas corpus sued out before the Supreme Court, and Ex parte Lipscomb, 111 Tex. 409, 239 S. W. 1101, is the pronouncement of the Supreme Court on the matter. The Supreme Court, while remanding the relator to the custody of the proper officer, did not pass upon the admissibility of the proffered testimony, but held that, if the court erred in ruling the evidence admissible, the party had ample remedy by appeal. It is true that in the first trial Judge Lipscomb did testify substantially as shown by appellants' eighth bill of exception, and that appellee did not object to said testimony. The record does not show why objection was not made, but, from a careful reading of the facts set out in appellants' said bill of exceptions, we think it must have been because it was not thought that Judge Lipscomb's testimony raised the issue or tended to show that there was an agreement between Sam Lee Gray and H. Lawson Gray that the deed from Sam Lee Gray to H. Lawson Gray was to convey the land in trust to H. Lawson Gray for the benefit of Sam Lee Gray. The recital of the testimony of Judge Lipscomb at the former trial set out in said bill of exceptions shows that Sam Lee Gray was not present at the time the deed was made; that there was no conversation between Sam Lee Gray and H. Lawson Gray at said time; that, so far as Judge Lipscomb knew, Sam Lee Gray knew nothing of the instrument claimed to be a trust agreement; that Sam Lee Gray did not sign said instrument; that said instrument was originated and prepared by Judge Lipscomb upon his own motion; and that, so far as Judge Lipscomb knew, the deed from Sam Lee Gray to H. Lawson Gray was an absolute deed. This is not only reflected by the proposed testimony of Judge Lipscomb, as shown by appellants' bill of exception No. 8, but it also found and set forth in the bill of exceptions prepared by the court at the request of appellants to stand in lieu of their bills of exception Nos. 9–18, inclusive,. which were refused by the court, and which bill prepared by the court was accepted by appellants. So we conclude that appellee's not objecting to the testimony of Judge Lipscomb on the former trial was not a waiver of his right to object, and that it appearing that appellants, on the instant trial, in connection with the proffered testimony of Judge Lipscomb, proposed to show by him that Sam Lee Gray was a party to the alleged trust agreement, and that he executed said agreement, and that in pursuance of said agreement he executed the deed to H. Lawson Gray conveying to him the land in controversy, to which proposed testimony of Judge Lipscomb appellee objected and insisted that all communications between him and Judge Lipscomb relative to the matter were privileged communications, we think were not only timely but

proper. As above said, under the circumstances, we do not think that appellee's failure to object on the first trial should be held a waiver of his right to object at another trial.

The object of the law, in cases like the instant case, being to protect the rights of the client in his property, in the trial of a case touching same, the mere failure to object in one trial should not be held to affect or amount to a waiver of his right to object in another trial, for, just as we think it was in this case, the client might think the testimony not injurious to his rights, whereas the testimony in the second trial might be different or more inclusive than that in the first, when he would determine to avail himself of the objection. We do not believe that this in any way conflicts with the holding in Steen v. National Bank (C. C. A.) 298 F. 36, cited by appellants. However, and especially under the facts of this case as reflected by the record, we do not believe that the rule as announced by the decisions of some courts that "a privilege once waived cannot be claimed on a subsequent trial" should be followed. It is not believed that any element of estoppel on the part of appellee to claim the protection by him urged exists to prevent him doing so. He at no time introduced the witness whose testimony is desired, he did not testify relative to the matter himself, nor does it appear that he has in any way misled appellants in the matter; hence we think the better view is that under the circumstances his failure to object on the former trial does not constitute an irrevocable waiver of the privilege. We think this conclusion is not only supported by the better reason, but by well-considered opinions of other courts. Maryland Casualty Co. v. Maloney, 119 Ark. 434, 178 S. W. 387, L. R. A. 1916A, 519; Burgess v. Sims, 114 Iowa, 275, 86 N. W. 307, 54 L. R. A. 364, 89 Am. St. Rep. 359; Briesenmeister v. Supreme Lodge K. of P., 81 Mich. 525, 45 N. W. 977. Furthermore, aside from the rule that the proposed testimony of Judge Lipscomb was not admissible because divulging confidential communications between himself and H. Lawson Gray, his client, still the proffered testimony of Judge Lipscomb, as we view it, disclosed by appellants' bill of exception No. 8, as well as the court's bill above alluded to, shows that there was no agreement between Sam Lee Gray and H. Lawson Gray, either before or after making the deed from Sam Lee Gray to H. Lawson Gray, dated June 23, 1911, that said conveyance was made in trust for the benefit of Sam Lee Gray.

[12] For the deed from Sam Lee Gray to H. Lawson Gray of date June 23, 1911, to be shown to be a conveyance in trust, an agreement to that effect between Sam Lee Gray and H. Lawson Gray must have existed at or prior to the making of the deed. We think that the testimony of Judge Lipscomb contained in the record, and as shown by appel-

lants' bill of exception No. 8, is clear that he knew of no such agreement on the part of Sam Lee Gray; that Sam Lee Gray was not present when he prepared the deed; that Sam Lee Gray knew nothing of the trust agreement which Judge Lipscomb says he drew as a scruple on his part between himself and H. Lawson Gray. The rule as to establishing a trust upon an absolute conveyance is thus laid down in 13 Cyc. of Evidence, 115:

"Where a deed or other written instrument is absolute in form, the parties thereto must be presumed to have intended the legal effect of its terms. A strong presumption arises against the existence of a trust. The burden of proof is upon the parties seeking to establish a trust with respect to such instrument, and a greater weight of evidence is necessary than a mere preponderance."

Tested by this rule, the court did not err in excluding Judge Lipscomb's testimony, because, if admitted, it would not have tended to prove that Sam Lee Gray had agreed with H. Lawson Gray that the absolute deed from him to H. Lawson Gray was other than an absolute deed to the land. Therefore, if it could be that there was error in the exclusion of the testimony, it was harmless error.

[13-15] Appellants' eleventh proposition complains that the court erred in instructing the jury to find for appellee, for in that appellants were the owners of 11.28 acres of land described in appellee's petition under a source of title independent of the common source of title. We think the proposition should be overruled. The description of the land in controversy is the same in the deeds from Sam Lee Gray, the common source, to H. Lawson Gray and to appellants. It conveys the land within certain named bounds, less certain named tracts, and amounts to 100 acres, more or less. The rule as to common source of title is that, when the plaintiff has proved that he and the defendant claim title to the land from a common source, and that of the two titles emanating from the common source his is the superior, he shows a prima facie right to recover. This is, however, a rule of evidence, and not of estoppel. Rice v. Railway, 87 Tex. 90, 26 S. W. 1047, 47 Am. St. Rep. 72. For the defendant in such case to defeat the plaintiff's cause of action, he must show that there is a superior outstanding title, and that he is the holder of that title, or that such superior outstanding title has never vested in the common source. Word v. Houston Oil Co. (Tex. Civ. App.) 144 S. W. 334. Appellants say that they were the owners of 11.28 acres by title independent of the common source, that is, under another source of title. Appellants also claim said land under a deed from Sam Lee Gray, containing the identical bounds. For them to recover the 11.28 acres admittedly contained in the description in the deeds, they must have proved that they held same under conveyance independent to the Sam Lee Gray

deed and independent of it, and that the title so conveyed was superior to the common source. In appellants' brief we are not pointed to any such conveyance or proof. The proposition is overruled.

The judgment should be affirmed, and it is so ordered.

Affirmed.

WALKER, J. I concur in the affirmance of this case.

### On Motion for Rehearing.

O'QUINN, J. Appellants have assigned in their motion for a rehearing many reasons why our judgment affirming the case should be set aside and the cause reversed and remanded. We shall discuss but a few of them.

It is first complained that the judgment from which they appealed was not a final judgment. They have joined appellee in a statement filed herein, that the matter upon which the complaint was based was an oversight, and that the judgment was final.

It is insisted that we erred in holding that the trial court did not err in refusing to submit to the jury the question of 5 years' limitation. We held that said question was not raised by the evidence, because the suit having been filed September 27, 1917, it was necessary for appellants to show that the taxes had been paid for 1912. The witness W. P. H. McFaddin, a member of and general manager of the McFaddin, Wiess & Kyle Land Company, the interested party, testified:

"In 1911, I rendered 662.39 acres. * * * I rendered it for the McFaddin, Wiess & Kyle Land Company. * * * In 1912, I rendered 640 acres. * * * In 1911, 662.39 acres. * * * I rendered less land in 1912 than I rendered in 1911. * * * I never sold any at all."

This testimony shows that appellants did not increase their tax rendition on the Johnson for the year 1912, so as to include the land in controversy, but to the contrary, as they did not sell any of their land on the Johnson, it shows without dispute that they actually rendered less than they did in 1911. So, according to their own testimony, the land rendered for the year 1912 did not include the Sam Lee Gray tract, and the issue was not raised as to the payment of taxes on same for 1912.

Appellants, in their written argument urging their motion for a rehearing, say that, by mistake or lack of knowledge on the part of McFaddin, they rendered more land in 1911 than they actually owned on the Johnson, and that, when the actual acreage in the several tracts on the Johnson owned by them is considered, the land in controversy would be included in the 1912 rendition, and should be so considered. We think this argument carries its own refutation on its face. It appears that, if McFaddin did not know in 1911

what appellants owned on the Johnson, and that he rendered 662.39 acres when it was actually less, he had not discovered the mistake, if it was such, when he rendered the land in 1912. As none of their land on the Johnson had been sold, and 662.39 acres rendered for 1911, and the mistake, if it was such, not having been discovered, if he had intended to have included the land in controversy for 1912, he would have added it to the 662.39 acres rendered in 1911, and, as he admits that the 1912 rendition was less than that of 1911, and none of the land had been sold, we think it clear that appellants did not increase their tax rendition on the Johnson so as to include the land in controversy. However, this was not the theory on which the case was tried in the court below, and no assignment based on any such contention was brought forward in their brief or urged on original submission.

Appellants insist that we erred in overruling their eleventh assignment of error, to the effect that the judgment awarded to appellee 11.28, acres of land described in appellee's petition, but not included in the deed from Sam Lee Gray to appellants, which was owned by appellants independent of the common source of title to the land in controversy. We think that our disposition of this question, in view of the state of the record and of appellants' brief, was correct, for the reasons stated in our opinion on original hearing; but appellee, in his answer to appellants' motion for rehearing, admits that the judgment wrongfully awards him the 11.28 acres, and asks that the judgment be reformed so as to exclude same therefrom. Because of said admission, the judgment heretofore rendered herein will be reformed, and said 11.28 acres of land, described as follows:

"A part of the J. S. Johnson one quarter league of land, Jefferson county, Texas, abstract 34, bounded thus: Beginning at the northwest corner of the said J. S. Johnson one quarter league and running thence south along the west line thereof 3325 vrs. to a point where an iron stake is found; thence east 960 vrs. to a point and post for corner on the edge of the marsh, which is the beginning corner of the tract here described; thence north 70¼ degrees west 78 vrs. to corner for southwest corner this tract; thence north 827⁴⁴⁄₁₀₀ vrs. to the river; thence east with the meanders of said river to the west line of the land described in deed from Sam Lee Gray to H. Lawson Gray of date June 23, 1911, recorded in volume 123, page 614, of the Deed Records of Jefferson County, Texas; thence south to the point of beginning, containing 11.28 acres,"

—will be and are excluded from said judgment and awarded to appellants.

Appellants present other grounds for rehearing, and same have been fully considered, but, as none of them in our opinion show error, they are overruled.

Because of appellee's admission of error

above noted relative to the 11.28 acres of land, the judgment is here reformed so as to exclude same from the recovery awarded appellee, and the same is awarded to appellants, together with the costs of this appeal. In all other respects the motion for rehearing is overruled.