PONDRUM et al. v. GRAY. (No. 955–4766.)

Commission of Appeals of Texas, Section A. Oct. 5, 1927.

1. Vendor and purchaser ⟨Key⟩245—Instructed verdict for plaintiff held error, in view of evidence that defendants were innocent purchasers of land.

Instructed verdict for plaintiff in trespass to try title *held* error, in view of evidence that defendants purchased land in good faith and without notice of prior unrecorded deed of plaintiff, who was in possession through his tenant.

2. Adverse possession ⟨Key⟩115(1) — Evidence held to raise issue of defendants holding under five-year statute of limitations (Vernon's Ann. Civ. St. 1925, art. 5509).

In trespass to try title, evidence *held* to raise issue as to whether defendants held under five-year statute of limitations (Vernon's Ann. Civ. St. 1925, art. 5509) by payment of taxes within five years of suit, and instructed verdict for plaintiff was error.

3. Trespass to try title ⟨Key⟩53—Evidence held not to sustain verdict for rents.

Verdict of $2,012.20 for rental of approximately 100 acres of land in trespass to try title

*held* not supported by evidence that rental value of about 35 acres was $5 per acre, and remainder about 15 cents per acre, from 1915 until 1925.

**4. Witnesses ⚖═202—Attorney's testimony as to preparation and execution of agreement held admissible, not being confidential communication.**

Testimony of attorney, as to preparation and execution of agreement at time of execution of deed between plaintiff and another, *held* admissible, not being objectionable as confidential communication between lawyer and client.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Trespass to try title by H. Lawson Gray against W. L. Pondrum, receiver, and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (289 S. W. 79), and defendants bring error. Judgments of both courts reversed and cause remanded to district court.

E. L. Nall, J. L. C. McFaddin, and Howth, Adams & Hart, all of Beaumont, for plaintiffs in error.

E. E. Easterling, A. L. Shaw, and Orgain & Carroll, all of Beaumont, for defendant in error.

BISHOP, J. Defendant in error, H. Lawson Gray, on September 27, 1917, filed this suit in the district court of Jefferson county in trespass to try title against the plaintiffs in error, W. L. Pondrum, receiver of McFadden-Wiess-Kyle Land Company, a joint-stock company, and W. P. H. McFadden, W. W. Kyle, Percy Wiess, Laura E. Wiess, Mrs. Ruth Sergent, and Paul O. Sergent, to recover about 100 acres of land situated on the J. S. Johnson survey in said county, and for rents in the sum of $4,000. Plaintiffs in error answered by plea of not guilty, interposing their plea of five years' limitation as against right of recovery of the land and two years' limitation as against the recovery of rents. Trial with a jury was had on April 15, 1925, and on the evidence the court instructed a verdict for defendant in error for the land and for the sum of $2,012.20 rents. The Court of Civil Appeals affirmed the judgment rendered in conformity with the verdict. 289 S. W. 79.

On May 5, 1908, H. Lawson Gray by partition deed conveyed to Sam Lee Gray, his brother, all of his right, title, and interest in and to this land. This deed was on the day of its execution filed for record in Jefferson county, and duly recorded. On June 23, 1911, Sam Lee Gray executed a deed to the land to H. Lawson Gray. This deed was not filed for record until June 28, 1911. On June 26, 1911, for a consideration of $2,750 paid to him in cash, Sam Lee Gray executed a warranty deed conveying the land to W. P. H. McFadden, V. Wiess, and W. W. Kyle, trustees for the McFadden-Wiess-Kyle Land Company. There is evidence showing that these parties had no knowledge of the deed from Sam Lee Gray to his brother at the time of their purchase, and that they examined the deed records of Jefferson county, and from the examination made believed that Sam Lee Gray was then the owner of the land and that his deed conveyed to them good title. At the time of the purchase, Sam Lee Gray told McFadden that he had a tenant on the place, one Puccio, and gave to McFadden written order directing Puccio to turn the property over to McFadden. On presentation of the order, Puccio delivered possession to McFadden, and plaintiffs in error have since the execution of the deed conveying to them the land held possession thereof. At the time of the execution of both deeds by Sam Lee Gray and for some time prior thereto, Puccio was in possession of the land under a rental contract with H. Lawson Gray.

[1] Plaintiffs in error assign as error the charge instructing verdict against them. They assert that there is evidence in the record showing that they purchased the land from Sam Lee Gray in good faith for a valuable consideration and without notice of the prior unrecorded deed from Sam Lee Gray to H. Lawson Gray. The Court of Civil Appeals held there was no evidence showing that plaintiffs in error were innocent purchasers for the reason that H. Lawson Gray was in possession through his tenant Puccio, and that this possession had the effect to put the purchasers on inquiry. It also held that the law required that plaintiffs in error make inquiry of Puccio and of H. Lawson Gray, and that, had they done this, they would have been informed of the unrecorded deed from Sam Lee Gray to H. Lawson Gray. We cannot agree that under the facts in this case the law required that inquiry be made of the holder of possession. H. Lawson Gray in 1908 had conveyed this land, by deed duly recorded in Jefferson county, to Sam Lee Gray. The purpose of our registration laws is to give notice of claims of right and title to property. H. Lawson Gray by this duly recorded deed had declared that Sam Lee Gray, from whom plaintiffs in error purchased, was the owner of this land. Having examined the record, and there found that H. Lawson Gray had conveyed all of his right, title, and interest in this land to Sam Lee Gray, we do not think it should be held as a matter of law that it was incumbent upon plaintiffs in error to make further inquiry of either H. Lawson Gray or his tenant. There is evidence showing that plaintiffs in error were innocent purchasers of the land, and for this reason the trial court should not have instructed verdict against them. The following language used by the court in the case of Eylar v. Eylar, 60 Tex. 315, is apt and controlling here:

---

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"It would seem that the sole office which possession performs, in the matter of notice, is to put a person desiring to purchase upon inquiry, and that it has no effect in determining what the inquiry shall be, or of whom it shall be made.

"The policy of the law, as evidenced by our statutes, requires all conveyances of land or interests therein for a term longer than one year to be evidenced by writing, and when parties place, in this the most certain and enduring form, the evidence of their right, they ought to be held, so far as third persons are concerned, to have therein spoken truly in respect to the title to the land to which the conveyance relates.

"That all persons who may deal with persons claiming land may have the means of knowing in whom titles to land rest, and that no one may buy what appears to be a good title, when another person may have better right not made public, the law requires all persons, for the protection of innocent purchasers and creditors, to register their titles to land.

"Such being the case, can it be said, even if possession is sufficient in all cases to put purchasers upon inquiry, that such inquiry is not prosecuted sufficiently far, when the person who desires to buy examines the records of the county and finds on record a deed from the person in possession to the person who offers to sell, and who under that deed asserts title?

"If the inquiry is prosecuted to the highest source which the law of the land declares shall exist for the determination of title, and to the source which the parties have created as the highest evidence of their respective rights, can it be true that it is further necessary to examine sources inferior and make inquiry as to whether or not there are claims, or even rights, in others not evidenced as the law requires, or otherwise the purchaser be charged with constructive notice of secret vices in the title which he buys.

"To so hold, we are of the opinion, would be to strike at the very foundation of the policy upon which registration laws rest.

"That there are cases to which registration laws do not apply is true, but those are cases in which titles vest by operation of law, or cases in which there has not been a wrongful holding out of some person to be the true owner of land, when in fact some other person has the better right, and not cases in which parties, as between themselves, have executed instruments evidencing their respective rights, which may be and which the law requires to be registered."

[2] Plaintiffs in error also insist that there is evidence showing that they had acquired title to the land under the statutes of limitation of five years (Vernon's Ann. Civ. St. 1925, art. 5509), and that for this reason the court erred in instructing verdict for defendant in error. The Court of Civil Appeals held that there is no evidence showing payment of taxes for the year 1912, and in the absence of such showing, the plea of limitation found no support in the evidence. It is true, as stated by that court in its opinion, that the evidence shows that for the year 1911 plaintiffs in error rendered and paid taxes on 662.39 acres of the J. S. Johnson survey and for the year 1912 they only rendered and paid taxes on 640 acres, and that they had not sold any of the land owned by them and on which they rendered and paid taxes for the year 1911. But there is also evidence showing that they rendered and paid taxes on more land than they owned on this survey in 1911, and that for the year 1912 they rendered and paid taxes on more land on this survey than they claimed and owned, including this land. We cannot therefore agree with the holding of the Court of Civil Appeals that there is no evidence showing the payment of taxes by plaintiffs in error on this land for the year 1912. There is evidence showing that plaintiffs in error had acquired title to this land under the five-year statute of limitation, and for this reason verdict should not be directed against them.

[3] The evidence as to the rental value of the land was "about $5 per acre" each year for the upland consisting of 35 acres, and "scarcely 15 cents" per acre each year for the marsh land (number of acres not definitely shown) from 1915, two years before suit was filed, until 1925, when the case was tried. This evidence does not support the verdict and judgment for $2,012.20. We are also of opinion that the evidence presented a question of fact as to rents and that the directed verdict was not warranted.

[4] Plaintiffs in error sought to prove that at the time of the execution of the deed of date June 23, 1911, the following agreement was also executed:

"The State of Texas, County of Jefferson:

"This memorandum of an agreement between Sam Lee Gray and H. Lawson Gray, executed this 23d day of June, A. D. 1911, witnesseth:

"Whereas, the said Sam Lee Gray has this day conveyed to H. Lawson Gray certain property more fully described in the deed and being the same land set apart to the said Sam Lee Gray on partition between Geo. C. O'Brien, H. L. Gray, and Sam Lee Gray, now this instrument is executed to declare the trust upon which said conveyance was executed, and the same are as follows:

"'(1) That said H. Lawson Gray is hereby authorized to sell or exchange the said land, or to convey same for any purpose deemed by him advantageous to the interest of said Sam Lee Gray.

"'(2) Out of the proceeds of such sales the said H. Lawson Gray may retain a sufficient sum to compensate him for outlays which he has made or may then have made for the account of said Samuel Lee Gray or invest for the benefit of him, the said Samuel Lee Gray.

"'(3) The said Samuel Lee Gray shall have the right to accounting of said H. Lawson Gray at periods of not less than six months apart and may at his option demand and have surrender of said property at any time on the payment of the lawful charges of the said H. Lawson Gray against it.

"'(4) It is intended that the power of sale of said H. Lawson Gray during the continuance of this trust shall be complete and remain

in operation so long as there remain any lawful charges of said H. Lawson Gray against it, and it is understood that the said H. Lawson Gray shall promptly sell off enough of said property to pay all delinquent taxes thereon.'"

They offered as a witness A. D. Lipscomb, who was the attorney of H. Lawson Gray at the time the deed was executed, to show that this agreement was prepared by him and executed at the same time of the execution of the deed, and that thereafter he delivered to H. Lawson Gray the original agreement, retaining in his possession a carbon copy thereof. An objection that this testimony involved a confidential communication between a lawyer and his client was sustained, and the court refused to require or permit the witness to testify. We think the witness should have been permitted, and if necessary required, to testify. The facts here sought to be shown were not such as come within the rule that confidential communications between lawyer and client may not over objection be disclosed in judicial investigation. Had defendant in error been a witness, there can be no doubt that he would have been required to testify, (a) as to whether this agreement was prepared by his attorney and executed at the time of the execution of the deed, (b) as to whether the original thereof had thereafter been delivered to him by his attorney, and (c) as to whether the purported carbon copy was a copy of the original agreement. The preparation and execution of this agreement was a matter of interest to both H. Lawson Gray and Sam Lee Gray, and the attorney who prepared the instrument for execution should not be held to bear such confidential relation to either that the other should be denied the right to his testimony in regard to its existence. We think the rule applicable here is clearly stated in 28 R. C. L. pp. 556 and 557, § 146, as follows:

"An attorney is often employed for some other purpose than to conduct litigation, to give advice on legal questions, or to engage in some other activity peculiarly within the province of an attorney at law as distinguished from a person engaged in some other pursuit. In such a case the relation of attorney and client in the strict sense of those terms cannot be said to exist between the attorney and the one who has engaged his services. Accordingly communications made during the course of that employment are not regarded by the courts as between attorney and client and are not accorded protection from disclosure. This rule has been applied in the case of an attorney acting as an agent for another, as an attorney in fact, or as a notary public. So where an attorney is employed merely to put in legal form and phrase certain documents or agreements of the parties, the fact that he is skilled in the law will not make him incompetent as a witness, nor can the communications made by the parties to him be considered as privileged. A conveyancer is not a legal adviser or a professional adviser in any proper sense of those terms and a communication made to a conveyancer is not privileged. This rule has been applied to the drawing of deeds, mortgages and agreements. And where an attorney is requested by a debtor to draw up a mortgage deed of his personal property, and the debtor discloses his purposes in making such a conveyance, either without any particular motive or in order to remove any scruple the attorney may have as to the character of the transaction, but no legal advice is asked or given, the testimony of the attorney as to such communications is admissible."

We recommend that the judgments of both courts be reversed and the cause remanded to the district court.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.